**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Damon Devereaux DURAPAU, Defendant–Appellant.**

No. 06CA2677.

Colorado Court of Appeals, Div. VI.

April 28, 2011.

As Modified April 12, 2012.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2009.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Stanley M. Morris, Cortez, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Damon Devereaux Durapau, appeals the district court's order requiring him to register as a sex offender under section 16–8–115(4)(a), C.R.S.2010. We affirm the court's order and dismiss the appeal in part without prejudice because we lack jurisdiction to consider defendant's contention that he should be permitted to withdraw his plea.

In this case of first impression, we conclude that applying section 16–8–115(4)(a)'s sex offender registration requirement to defendant, who pled and was found not guilty by reason of insanity (NGRI) to an offense involving unlawful sexual behavior prior to the section's amendment requiring registration, does not violate his constitutional rights.

## I. Factual Background

According to a 1997 probable cause affidavit, defendant carried the intoxicated victim over his shoulder from her neighboring apartment to his and had nonconsensual sexual intercourse with her. Approximately two months later, defendant was arrested following an incident involving the same victim. Although he maintained the sex was consensual, defendant was charged with first degree sexual assault and other offenses not relevant to this appeal.

An examination at the Colorado Mental Health Institute at Pueblo (CMHIP) indicated that defendant was incompetent to proceed to trial. Following a commitment period, his competency was found to be restored, and the case was set for trial in 1999.

On February 16, 1999, pursuant to a plea agreement, the district court found defendant NGRI of first degree sexual assault and other offenses not relevant here. The court stated, "Not guilty by reason of insanity is found as a matter of fact and law based on the reports in the file," and defendant was committed to CMHIP.

On January 5, 2005, the court granted defendant community placement pursuant to CMHIP's recommendation.

That same year, the General Assembly amended both the temporary removal and release from commitment statutes by replacing the word "may" with "shall," thereby requiring NGRI defendants who committed offenses involving unlawful sexual behavior to register as sex offenders. §§ 16–8–115(4)(a), 16–8–118(2)(a), C.R.S.2010; *see* Ch. 251, secs. 1 & 2, 2005 Colo. Sess. Laws 995–96 (effective June 2, 2005).

On April 12, 2006, CMHIP staff opined that defendant was eligible for conditional release because he no longer suffered from an abnormal mental condition and was not a danger to himself or the community.

On November 13, 2006, the court granted defendant conditional release from CMHIP under section 16–8–115, C.R.S.2010. Although defendant's treating psychiatrist recommended against it, the court ordered sex offender registration as a condition of release.

Defendant now appeals that order, arguing (1) the court lacked jurisdiction to impose registration because no such requirement existed when he entered his plea; (2) it violated his constitutional rights; and (3) he should be permitted to withdraw his plea. We address these contentions in turn.

## II. Statutory Application

■ Defendant contends that the court erred in imposing sex offender registration because no such statutory requirement existed when he entered his NGRI plea. We discern no error.

Because this question involves statutory interpretation, we review the district court's decision de novo. *People v. Scheffer*, 224 P.3d 279, 287 (Colo.App.2009).

■ In interpreting a statute, our primary responsibility is to effectuate the General Assembly's intent. *Whitaker v. People*, 48 P.3d 555, 558 (Colo.2002). We look first to the statute's plain language. *Id.* If it clearly expresses the legislative intent, then we must give effect to the statutory language's ordinary meaning. *Id.* We apply facially clear and unambiguous statutes as written because we presume the General Assembly meant what it clearly said. *In re Marriage of Chalat*, 112 P.3d 47, 54 (Colo. 2005). We also avoid constructions that defeat the General Assembly's obvious intent. *People v. Schupper*, 140 P.3d 293, 296 (Colo. App.2006).

Section 16–8–115(4)(a) addresses the registration requirement for an NGRI defendant who is released from commitment:

In addition to any terms and conditions of release imposed pursuant to subsection (3) of this section, a court *shall* order a defendant, as a condition of release, to register

**46**

with the local law enforcement agency of the jurisdiction in which the defendant resides if the court finds that:

(I) The defendant was found not guilty by reason of insanity on a charge of an offense involving unlawful sexual behavior; or

(II) The defendant was found not guilty by reason of insanity on a charge of any other offense, the underlying factual basis of which includes an offense involving unlawful sexual behavior.

(Emphasis added.)

■ In 2005, the General Assembly amended section 16–8–115(4)(a) by replacing the word "may" with "shall." Ch. 251, sec. 1, 2005 Colo. Sess. Laws 995. "Unless the context indicates otherwise, the word 'shall' generally indicates that the General Assembly intended the provision to be mandatory." *DiMarco v. Dep't of Revenue,* 857 P.2d 1349, 1352 (Colo.App.1993) (citing *People v. District Court,* 713 P.2d 918 (Colo.1986)); *see also Riley v. People,* 104 P.3d 218, 221 (Colo. 2004) ("There is a presumption that the word 'shall' when used in a statute is mandatory."). By including the mandatory word "shall," the General Assembly clearly evinced its intent that all NGRI offenders who have pled to an offense involving unlawful sexual behavior be required to register as a condition of release. § 16–8–115(4)(a).

Here, in 1999, defendant pled NGRI to first degree sexual assault in violation of a prior version of section 18–3–402(1)(a), a class three felony, involving unlawful sexual behavior. *See* § 16–8–115(4)(g)(I)(B), C.R.S. 2010 (an offense involving unlawful sexual behavior includes sexual assault in violation of section 18–3–402, as it existed prior to July 1, 2000). Because defendant pled NGRI to an offense involving unlawful sexual behavior, and he was granted conditional release

from CMHIP after amended section 16–8–115(4)(a)'s effective date, the court was statutorily required to impose registration as a condition of release.

Although defendant acknowledges that section 16–8–115(4)(a) uses the word "shall," he maintains that he should not be required to register as a sex offender because his treatment clinicians recommended against registration.

Defendant's psychiatrist advised against sex offender registration because, in her opinion, he posed a low risk for sexual violence. She testified, "To do all of the extra monitoring that's required doesn't make sense in that I don't think it's providing any benefit to the public whatsoever. Plus it ... increases public risk some because of the stress it puts on th[e] particular person."

■ Defendant argues that mandatory registration requirements for defendants who are considered a low recidivism risk is "absurd" and that greater deference should be afforded to health professionals. However, the legislature has clearly expressed its intent that registration be mandatory for defendants who pled NGRI to an offense involving unlawful sexual behavior. § 16–8–115(4)(a). Thus, neither courts nor treatment professionals have discretion in determining whether such defendants must register as sex offenders as a condition of release.[1] We may not second-guess the wisdom or desirability of the General Assembly's policy choice. *See Colorado Office of Consumer Counsel v. Public Utilities Comm'n,* 42 P.3d 23, 28–29 (Colo.2002) ("courts do not approve or disapprove the wisdom ... or the desirability of legislative acts" (quoting *Kallenberger v. Buchanan,* 649 P.2d 314, 318 (Colo.1982))); *see also Dep't of Transp. v. City of Idaho Springs,* 192 P.3d 490, 494 (Colo.App.2008) (courts

1. Although the 2005 amendments replaced "may" with "shall" in sections 16–8–115(4)(a) and 16–8–118(2)(a), section 16–8–115(4)(a.5), which applies to defendants who admit committing unlawful sexual offenses during treatment, retained the word "may." That subsection, formerly codified in section 16–8–115(4)(a)(III), provides, "In addition to any terms and conditions of release imposed pursuant to subsection (3) of this section, a court *may* order a defendant, as a condition of release, to register with the local law enforcement agency of the jurisdiction in which the defendant resides if the court finds that the chief officer of the institution in which the defendant has been committed recommends registration based on information obtained from the defendant during the course of treatment that indicates the defendant has committed an offense involving unlawful sexual behavior." (Emphasis added.)

may not rewrite statutes). Accordingly, we will not disturb the court's order.

### III. Jurisdiction

■ Despite the statute's plain meaning and the legislative history supporting mandatory registration, defendant maintains that he should not be required to register because he was never convicted of a crime, and the court therefore lacked jurisdiction to impose any requirement other than commitment. We disagree.

To support his argument, defendant cites section 16–22–112(1), C.R.S.2010, which provides in relevant part, "The general assembly finds that persons *convicted* of offenses involving unlawful sexual behavior have a reduced expectation of privacy because of the public's interest in public safety." (Emphasis added.) He further notes that section 16–22–103, C.R.S.2010, requires "convicted" sex offenders to register, and section 16–22–102(3), C.R.S.2010, defines "convicted" and "conviction" as "having received a verdict of guilty by a judge or jury, having pleaded guilty or nolo contendere, having received a disposition as a juvenile, having been adjudicated a juvenile delinquent, or having received a deferred judgment and sentence or a deferred adjudication." Thus, defendant argues that his NGRI plea did not meet the statutory definition of a "conviction."

Defendant's reliance on these statutory provisions is misplaced. The district court's order was not based on his having been "convicted" of a sexual offense. Rather, the registration requirement was triggered by defendant's conditional release from CMHIP following the district court's acceptance of his NGRI plea to first degree sexual assault. *See* § 16–8–115(4)(a).

Because the court's 2006 order occurred after the 2005 effective date of 16–8–115(4)(a)'s amendment requiring the court to order NGRI defendants to register as a condition of release, we conclude that the district court had jurisdiction to require that defendant register.

### IV. Constitutionality

We also reject defendant's contention that requiring him to register violates his constitutional rights because no registration requirement existed when he entered his NGRI plea.

■ Statutes are presumed to be constitutional, and "the party challenging [a statute's] validity has the burden of proving unconstitutionality beyond a reasonable doubt." *People v. Hickman,* 988 P.2d 628, 634 (Colo. 1999) (quoting *People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994)).

■ Defendant contends that sex offender registration violates his due process rights by substantially depriving him of a liberty interest. He asserts that imposing registration here is analogous to a court's exceeding its jurisdiction by accepting guilty pleas to nonexistent offenses. We are not persuaded.

In *People v. Wetter,* 985 P.2d 79, 80 (Colo. App.1999), another division of this court concluded that the district court exceeded its jurisdiction by accepting a defendant's guilty plea to an offense that was not a crime when the alleged incident occurred, and therefore vacated the defendant's conviction. That case is distinguishable.

■ Here, defendant pled and was found NGRI of an existing offense, first degree sexual assault, under the applicable version of section 18–3–402(1)(a). An NGRI plea "is a plea in the nature of confession and avoidance." *People v. Chavez,* 629 P.2d 1040, 1047 (Colo.1981). "By asserting it the defendant admits the acts charged, but denies criminal culpability." *Id.* (quoting *Leick v. People,* 136 Colo. 535, 546, 322 P.2d 674, 681 (1958)). An NGRI verdict absolves the defendant of criminal responsibility and results in commitment to the institution's custody until he or she is eligible for release. *People v. Serravo,* 823 P.2d 128, 140 (Colo.1992).

Section 16–8–115(4)(a)'s registration requirement was triggered by the court's conditional release order, not the dates of the charged offense or the NGRI finding. Thus, unlike the cases upon which defendant relies, the applicable statutory provision defining the offense here was effective when defen-

dant was charged and pled NGRI, and the registration requirement was effective when the court ordered his conditional release. We therefore reject defendant's due process argument.

■ Defendant next asserts that the trial court denied him due process by "put[ting] something into the law that was not there." Although defendant characterizes this contention as a due process argument, we perceive it to be an ex post facto challenge to section 16–8–115(4)(a).

■ Constitutional prohibitions against ex post facto laws forbid the General Assembly from retroactively increasing or making more onerous a crime's applicable punishment. *People v. Woodward*, 11 P.3d 1090, 1092 (Colo.2000). Thus, we must determine whether requiring sex offender registration is punitive. Examining the statutory text is instructive. *See Smith v. Doe*, 538 U.S. 84, 93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (upholding Alaska Sex Offender Registration Act's constitutionality because statutory text's stated public safety objective was nonpunitive).

Section 16–22–110(6)(a), C.R.S.2010, provides,

The general assembly hereby recognizes the need to balance the expectations of persons convicted of offenses involving unlawful· sexual behavior and the public's need to adequately protect themselves and their children from these persons, as expressed in section 16–22–112(1). The general assembly declares, however, that, in making information concerning persons convicted of offenses involving unlawful sexual behavior available to the public, *it is not the general assembly's intent that the information be used to inflict retribution or additional punishment on any person convicted of unlawful sexual behavior or of another offense*, the underlying factual basis of which involves unlawful sexual behavior.

(Emphasis added.)

The General Assembly has repeatedly declared that sexual offenses are a matter of grave concern and that registration is necessary for community protection. *See, e.g.,*

§ 16–22–112(1) ("The general assembly finds that persons convicted of offenses involving unlawful sexual behavior have a reduced expectation of privacy because of the public's interest in public safety. The general assembly further finds that the public must have access to information concerning persons convicted of offenses involving unlawful sexual behavior that is collected pursuant to this article to allow them to adequately protect themselves and their children from these persons. The general assembly declares, however, that, in making this information available to the public, as provided in this section and section 16–22–110(6), it is not the general assembly's intent that the information be used to inflict retribution or additional punishment on any person convicted of unlawful sexual behavior or of another offense, the underlying factual basis of which involves unlawful sexual behavior."); *see also* § 16–10–301(1), C.R.S.2010 ("The general assembly hereby finds and declares that sexual offenses are a matter of grave statewide concern."); § 16–21–101, C.R.S.2010 ("The general assembly hereby finds and declares that the creation of an offender-based tracking system is necessary in order to improve the consistency of data shared by the different elements of the criminal justice system and to allow for the tracking of offenders through the criminal justice system.").

Thus, as it has with other sex offenders, the General Assembly has determined that requiring NGRI defendants, who have committed an offense involving unlawful sexual behavior and who are released from CMHIP, to register aids in preventing and investigating sex crimes.

In *Jamison v. People*, 988 P.2d 177, 180 (Colo.App.1999), another division of this court concluded that former section 18–3–412.5(1)'s sex offender registration requirement (now codified with amendments at section 16–22–103) does not violate prohibitions against ex post facto laws. The division reasoned that registration is remedial, not punitive, and therefore does not unconstitutionally enhance punishment. *Id.; see also Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (upholding constitutionality of Kansas Sexually Vio-

lent Predator Act and rejecting ex post facto challenge because civil commitment is not punitive). Applying similar reasoning, other divisions of this court, including this division, have also rejected ex post facto challenges to sex offender registration requirements. *See People v. Sowell,* —— P.3d —— (Colo.App.2011) (rejecting ex post facto challenge to lifelong duty to register because registration is not punishment); *People v. Tuffo,* 209 P.3d 1226, 1230 (Colo.App.2009) (registration and notification requirements do not violate ex post facto prohibition because they are intended to protect the community rather than punish the offender).

We find *Jamison, Tuffo,* and *Sowell* persuasive. The statutory scheme's plain language indicates that registration is not punitive, but rather aids law enforcement in investigating future crimes and promotes public safety. *See Jamison,* 988 P.2d at 180 (law will withstand an ex post facto challenge if the legislative intent is not to impose further punishment for past crimes, but instead is incident to a present situation's regulation).

To the extent defendant attempts to raise other due process arguments, we are unable to address them. Other than an analogy to cases where a defendant pleads guilty to a nonexistent crime and what we perceive as an ex post facto challenge, defendant's briefs present no arguments or analysis supporting his constitutional contentions beyond repeated bare and conclusory statements that sex offender registration violates his due process rights by depriving him of a liberty interest. *See People v. Hill,* 228 P.3d 171, 176 (Colo.App.2009) (declining to address argument where the defendant failed to present any analysis or argument, other than the conclusory statement that his confrontation rights were violated); *People v. Simpson,* 93 P.3d 551, 555 (Colo.App.2003) (declining to consider "a bald legal proposition presented without argument or development"); *see also People v. Diefenderfer,* 784 P.2d 741, 752 (Colo.1989) (counsel for appealing party's duty is to inform a reviewing court as to the specific errors relied on, as well as the grounds, supporting facts, and authorities therefor).

We note, however, that in *People v. Stead,* 66 P.3d 117 (Colo.App.2002), another division of this court concluded that former section 18–3–414.5's lifetime sex offender registration and internet posting requirements (now codified with amendments at section 16–22–103 and 16–22–111, C.R.S.2010) do not violate a defendant's due process rights. 66 P.3d at 122. Reasoning that the registration requirement is not punitive in that it imposes no fine, confinement, or restraint, the division concluded that registration is not excessive and is rationally related to the public safety purposes it serves. *Id.* The division therefore determined that the registration requirement withstood a due process challenge. *Id.; see also In re W.M.,* 851 A.2d 431, 440 (D.C.2004) (rejecting NGRI offenders' challenge to D.C. Sex Offender Registration Act's constitutionality because it established a nonpunitive civil regulatory scheme and therefore did not violate Ex Post Facto, Double Jeopardy, or Due Process Clauses).

## V. Plea Withdrawal

 Defendant contends that his case should be remanded to the district court for a hearing to allow him to withdraw his plea because he was not advised of the registration requirement. We lack jurisdiction to consider this issue, and therefore dismiss that portion of this appeal.

 Under C.A.R. 1, an appeal may be prosecuted only from a final appealable order. *People v. Thomas,* 116 P.3d 1284, 1285 (Colo.App.2005). "A final appealable order is one that effectively terminates the proceedings in the court below and is a jurisdictional prerequisite to appellate review." *Id.; see People v. Curren,* 228 P.3d 253, 257 (Colo.App.2009) (a final judgment ends the particular action, leaving nothing further for the pronouncing court to do to completely determine the involved parties' rights).

Here, defendant appeals the November 13, 2006 order, in which the court expressly reserved ruling on whether defendant should be allowed to withdraw his plea by stating:

> The third set of issues relates to withdrawal of guilty pleas, allegations of erroneous advisement by the Court and inadequate

representation by counsel. On that issue, I'm not going to make any rulings today. Defense counsel has requested that I do not rule on that issue until it is presented by alternate defense counsel.

Nothing in the record suggests that the district court addressed defendant's request to withdraw his plea. Because the court reserved ruling on that issue, we lack a final appealable order concerning defendant's motion to withdraw his plea. Accordingly, this issue is not properly before us on appeal. *See* C.A.R. 1(a)(1), 4(b); *Thomas,* 116 P.3d at 1285; *cf. People v. Kelling,* 151 P.3d 650, 655 (Colo.App.2006) ("[B]ecause of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal.").

## VI. C.A.R. Compliance

Finally, we note that defendant's opening brief does not comply with C.A.R. 28 and 32. What defendant characterizes as standards of review are not appellate standards of review, but rather recitations of legislative history, legal arguments, and statutory interpretation principles. *See* C.A.R. 28(k) (requiring that party raising an issue concisely state applicable standard of review). Defendant's brief also repeatedly omits record citations where they are required and contains a defective certificate of compliance. *See* C.A.R. 28(e) (requiring record citations).

The appellate rules are not mere technicalities but rather are designed to facilitate appellate review. *See O'Quinn v. Baca,* 250 P.3d 629, 631 (Colo.App.2010). This court expects counsel to read, be familiar with, and comply with the Colorado Appellate Rules. *Patterson Recall Comm., Inc. v. Patterson,* 209 P.3d 1210, 1220 (Colo.App. 2009). Defense counsel's failure to comply with the appellate rules subjects his briefs to being stricken. *See Castillo v. Koppes–Conway,* 148 P.3d 289, 291 (Colo.App.2006) (division refused to consider noncompliant brief). However, in the interests of judicial economy, we have declined to strike defendant's brief. *See Bruce v. City of Colorado Springs,* 252 P.3d 30, 32 (Colo.App.2010) (di-

vision elected to consider merits of noncompliant brief). Nevertheless, we remind counsel to comply with this court's appellate rules. *Valentine v. Mountain States Mutual Casualty Co.,* 252 P.3d 1182, 1186 (Colo.App. 2011).

After defendant's brief was filed, this court instituted screening procedures to ensure that all briefs comply with C.A.R. 28 and 32. Under these procedures, defendant's brief likely would have been stricken and defense counsel would have been directed to file a complying brief. In the future, counsel's failure to comply with the appellate rules may result in his briefs being stricken or other appropriate sanctions, including dismissal. *See* C.A.R. 38(e) ("appellate court may apply such sanction as it deems appropriate, including dismissal, for the failure to comply with … these appellate rules"); *Bruce,* 252 P.3d at 32 (noting numerous deficiencies and "appropriate sanctions, including dismissal"); *see also State ex rel. Dep't of Corr. v. Pena,* 788 P.2d 143, 147 (Colo.1990) (when confronted with a party's failure to comply with the appellate rules, an appellate court should consider the full range of possible sanctions and select the one most appropriate under the circumstances presented in a particular case).

The portion of this appeal concerning defendant's attempt to withdraw his NGRI plea is dismissed without prejudice, and the court's order is affirmed.

Judge ROMÁN and Judge RICHMAN concur.