2012 COA 212

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Allen Paul ALLMAN, Defendant–Appellant.**

**No. 09CA1347.**

Colorado Court of Appeals, Div. V.

Dec. 6, 2012.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 Defendant, Allen Paul Allman, appeals his judgment of conviction entered on a jury verdict finding him guilty of failing to register as a sex offender under the Colorado Sex Offender Registration Act, §§ 16–22–101 to – 115, C.R.S.2012 (Registration Act).

¶ 2 Defendant attacks his conviction on several constitutional, statutory, and procedural grounds, but we affirm for the following reasons:

- First, we decline to review defendant's constitutional challenge that the Registration Act is overbroad, and we reject his claim that the Act is unconstitutionally vague as applied to his conduct.
- Second, we hold as a matter of first impression that the term "residence" does not require a residential or mailing address, and we conclude that the evidence was sufficient to support the jury's verdict that defendant had established a residence in Garfield County and that defendant knowingly failed to register in Garfield County.
- Third, we conclude that no special unanimity instruction was required.
- Fourth, we hold that defendant was not in custody for purposes of *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), prior to his arrest and therefore that the trial court did not err in failing to suppress his pre-arrest statements.

## I. Background

¶ 3 Defendant, a convicted sex offender, is required to register with certain law enforcement authorities under the Registration Act.

¶ 4 In 2007, defendant lived in Colorado Springs with his father and was registered in El Paso County. That year, he went to Garfield County to look for work and found a job in Rifle upon his arrival. The job paid less than he had anticipated, and he therefore opted to sleep in his car during the work week. At night, he parked in various locations, including his work site, rest stops, and parking lots mostly in and around the adjacent towns of Parachute and Battlement Mesa, but never in the same location two nights in a row. He drove back to Colorado Springs every weekend. Defendant joined the Battlement Mesa recreation center (rec center) with a coworker and frequently exercised, swam, and showered there.

¶ 5 Defendant was present and working in Garfield County for approximately two and one-half months. He never established a residential or mailing address in Garfield County, and at trial he testified that he did not believe that sleeping in his car constituted "living" there.

¶ 6 Sheriff's deputies found defendant in his sleeping bag in his car in the rec center parking lot one evening. Defendant initially told the deputies he was staying in a nearby trailer but later admitted he was staying in his car. The deputies arrested him, and he was charged with one felony count of failure to register in violation of section 18–3–412.5(1)(a), (2), C.R.S.2012, and proceeded to trial. At the close of the prosecution's evidence, defendant moved for a judgment of acquittal, arguing that the prosecution had not presented sufficient evidence to support a conviction. The trial court denied the motion. The jury found defendant guilty.

## II. Constitutional Challenges to the Registration Act

¶ 7 The constitutionality of a statute is a legal question that we review de novo. *People v. Hicks,* 262 P.3d 916, 919 (Colo.App.2011) (citing *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo.2007)). In doing so, we begin with the presumption that the statute is constitutional. *People v. Baer,* 973 P.2d 1225, 1230 (Colo.1999). The challenging party must establish its unconstitutionality beyond a reasonable doubt. *People v. Shell,* 148 P.3d 162, 172 (Colo.2006); *People v. Rowerdink,* 756 P.2d 986, 990 (Colo. 1988).

### A. Overbreadth

¶ 8 Defendant first contends that the Registration Act is unconstitutionally overbroad as applied to his conduct because it infringes on his fundamental right to travel. A statute may be unconstitutionally overbroad as applied if it threatens the challeng-

er's exercise of a fundamental or express constitutional right. *See Rowerdink,* 756 P.2d at 990 (citations omitted). The right to travel within the United States is a fundamental right.[1] *E.g., United States v. Guest,* 383 U.S. 745, 758, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

¶ 9 Here, however, defendant did not allege in the trial court an infringement on his right to travel. He merely raised a general contention that the Registration Act is "overly broad as applied to the facts of this case." As a result of defendant's silence on the claimed right to travel, the trial court did not make express findings on this issue, and the factual record is, at best, scant. *See People v. Patrick,* 772 P.2d 98, 100–01 (Colo.1989) ("[I]t is imperative that there be some factual record made by the trial court which states why … the statute is unconstitutional as applied."); *People v. Torres,* 224 P.3d 268, 272–73 (Colo.App.2009) (rejecting as-applied constitutional challenge due to incomplete record of relevant facts).

■ ¶ 10 Moreover, beyond the conclusory allegation in his opening brief, defendant provides no analysis regarding his right to travel. *See People v. Durapau,* 280 P.3d 42, 49 (Colo.App.2011) (declining to review constitutional challenge to statute where defendant's brief presented bare and conclusory statements); *People v. Hill,* 228 P.3d 171, 176 (Colo.App.2009) (same); *People v. Simpson,* 93 P.3d 551, 555 (Colo.App.2003) (same).[2] For example, defendant does not allege that the registration requirements penalize him for or restrict him from travel or ban him from certain areas. *Cf. Johnson v. City of Cincinnati,* 310 F.3d 484, 496–98 (6th Cir.

2002) (finding that ordinance banning affected individuals from certain neighborhood impermissibly infringed on right to travel). Nor does it restrict him from driving on certain streets or roads. *Cf. Lutz v. City of York,* 899 F.2d 255, 268 (3d Cir.1990) (suggesting ordinance that restricts all freedom of movement on municipal streets would be impermissible).

■ ¶ 11 Absent a developed record and specific allegations as to how the Registration Act infringes on his rights, we decline to review defendant's claim that the Registration Act is unconstitutionally overbroad as applied to his conduct.

### B. Vagueness

¶ 12 We consider and reject defendant's contention that the Registration Act is unconstitutionally vague as applied to his conduct.

#### 1. Preservation of Error

■ ¶ 13 We agree with the People's threshold argument that defendant failed to preserve his constitutional vagueness challenge because he did not expressly present the challenge to the trial court. Constitutional arguments must be explicitly raised in the trial court; implicit claims are unpreserved. *People v. McNeely,* 68 P.3d 540, 545 (Colo.App.2002). Explicit arguments alert the trial court to the challenger's contentions and enable the trial court to make a factual record on the issue, which is imperative to appellate review. *Patrick,* 772 P.2d at 100; *People v. Veren,* 140 P.3d 131, 140 (Colo.App. 2005).

---

**1.** The right to interstate travel is well-established. *Guest,* 383 U.S. at 758, 86 S.Ct. 1170; *Mayo v. Nat'l Farmers Union Prop. & Cas. Co.,* 833 P.2d 54, 58 (Colo.1992) (citing *Dunn v. Blumstein,* 405 U.S. 330, 338–39, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)). However, defendant appears to be asserting a right to *intra*state travel. The parameters of the right to intrastate travel are less developed under United States Supreme Court and Colorado law. *See, e.g., Memorial Hosp. v. Maricopa County,* 415 U.S. 250, 255–56, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (refraining from drawing distinction between interstate and intrastate travel); *Mayo,* 833 P.2d at 59–60 (suggesting, but not deciding, that a "right to travel

*within* and between states" exists) (emphasis added).

**2.** Defendant argues for the first time in his reply brief that the Registration Act "is in danger of falling into the historic realm of laws criminalizing homelessness or vagrancy." Defendant does not explain how requiring a person without a fixed address to register as a sex offender "criminalizes" homelessness. *See Durapau,* 280 P.3d at 49 (declining to consider conclusory constitutional arguments). In any event, we do not consider arguments raised for the first time in a reply brief. *People v. Grant,* 174 P.3d 798, 803 (Colo.App.2007).

¶ 14 Our conclusion that the error was not preserved raises the question of the extent to which defendant is entitled to appellate review of this issue. There are two lines of authority in Colorado on this question in criminal cases. The first line derives from *People v. Cagle,* 751 P.2d 614, 619 (Colo. 1988), involving a facial challenge to the constitutionality of a statute, in which the supreme court stated in dictum [3] that "[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal." The court provided no analysis for this proposition beyond citing to opinions in two civil cases declining to review unpreserved claims of statutory unconstitutionality. *Id.* However, numerous opinions by the supreme court and divisions of this court have relied on *Cagle* in declining to review various forms of unpreserved constitutional error. *See, e.g., Martinez v. People,* 244 P.3d 135, 139–40 (Colo.2010), and decisions cited in *People v. Devorss,* 277 P.3d 829, 834 (Colo. App.2011), and *People v. Greer,* 262 P.3d 920, 933–34 (Colo.App.2011) (J. Jones, J., specially concurring) (all citations to *Greer* in this opinion are to Judge Jones's special concurrence). A principal basis for this line of cases in the context of as-applied constitutionality challenges is the inability of the appellate court to decide the issue because of an insufficient record. *See Patrick,* 772 P.2d at 100 (incomplete record precluded determination of as-applied constitutionality challenge to a statute); *Veren,* 140 P.3d at 140 (to consider an as-applied claim, a factual record "is imperative").

¶ 15 In the second line of cases, the supreme court and divisions of this court have frequently opted to review the merits of unpreserved constitutional claims. *See, e.g., Hinojos–Mendoza v. People,* 169 P.3d 662, 667–68 (Colo.2007) (challenge to constitutionality of statute both facially and as applied); *Devorss,* 277 P.3d at 834 (citing numerous cases involving unpreserved constitutional claims); *Greer,* 262 P.3d at 934 (same). Courts doing so state that, despite the sweeping language in *Cagle,* they have discretion to consider such claims. *Hinojos–Mendoza,* 169 P.3d at 667; *Devorss,* 277 P.3d at 834; *Greer,* 262 P.3d at 932–33.[4] Just as the absence of a sufficient record is a common basis for refusing to review unpreserved constitutional error, courts that have exercised their discretion to review such error have relied on the presence of a sufficiently developed record as a basis for doing so. *See Devorss,* 277 P.3d at 834 (citing cases); *see also Hinojos–Mendoza,* 169 P.3d at 679–70 (court's review of unpreserved challenge to constitutionality of a statute demonstrated that adequate record had been developed in the trial court); *Greer,* 262 P.3d at 936 (perceiving "no principled basis for a rule categorically shielding challenges to the constitutionality of statutes from plain error review" where an adequate factual record has been developed in the trial court).

¶ 16 For the following reasons, we conclude that, notwithstanding the doctrine articulated in *Cagle,* we should exercise our discretion to consider defendant's unpreserved as-applied vagueness challenge to the Registration Act:

- First, the discretionary language of Crim. P. 52(b) is clear and creates no exception for challenges to the constitutionality of statutes.

- Second, we are persuaded by the reasoning in *Devorss* and the special concurrence in *Greer.*

- Third, the supreme court recently followed this approach in *Hinojos–Mendoza.*

- Fourth, the People's answer brief, while pointing out that the vagueness claim was not preserved in the trial court, does not contend that we should

---

3. The court pointed out that the constitutional issue had been raised in the trial court and was thus properly preserved. *Cagle,* 751 P.2d at 619.

4. Support for such discretion can be found in Crim. P. 52(b), which states, "[p]lain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the court." (emphasis added). *See*

*Greer,* 262 P.3d at 932. The United States Supreme Court held in *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), that the identically worded Fed.R.Crim.P. 52(b) gives federal courts discretion to remedy an unpreserved error, applying a four-part plain error test.

not hear it; rather, it argues that the claim should be reviewed under the plain error standard. The People fully briefed the merits.

- Fifth, the trial court record here is sufficiently developed so that we may review the claim. The parties extensively litigated the meaning of the Registration Act, including the term "residence." As discussed below, a significant component of defendant's defense was that he did not know that he had an obligation to register in Garfield County.

¶ 17 We therefore choose to exercise our discretion and reach the merits of defendant's unpreserved vagueness challenge. We review the challenge for plain error. Plain error review requires that we determine whether (1) there was an error, (2) the error was "plain," or clear and obvious, and (3) the error was substantial, meaning that it so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116 (citing *People v. Miller*, 113 P.3d 743, 750 (Colo.2005)). The plain error standard "was formulated to permit an appellate court to correct 'particularly egregious errors.'" *Id.* (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo.1987)). As discussed in the next section, we conclude that there was no error.

### 2. Analysis

¶ 18 To comport with due process, statutes must supply adequate standards to prevent arbitrary and discriminatory enforcement and give fair notice of the conduct prohibited so that persons may guide their actions accordingly. *People v. Hickman*, 988 P.2d 628, 643 (Colo.1999) (citing *People v. Janousek*, 871 P.2d 1189, 1195 (Colo.1994)). A statute is void for vagueness "where its prohibitions are not clearly defined and it is reasonably susceptible of more than one interpretation by a person of common intelligence." *People v. Clendenin*, 232 P.3d 210, 216 (Colo.App.2009) (citing *Hickman*, 988 P.2d at 643).

¶ 19 We conclude that the statute survives the as-applied challenge because the language of the Registration Act is not vague as applied to defendant's conduct as he described it: "spending time in" or "staying in" his car while living in Garfield County for more than two months.

¶ 20 When interpreting a statute, our primary task is to ascertain and give effect to the legislative purpose underlying it. *People v. Smith*, 254 P.3d 1158, 1161 (Colo.2011). If the statute is not ambiguous, we look only to its plain language and give words and phrases their ordinary meaning. *City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 590 (Colo.1997).

¶ 21 The Registration Act is not vague as applied to defendant's living in his car because:

- A "residence" is a "place *or* dwelling that is used ... for habitation" and "may include, *but need not be limited to*, a temporary shelter." § 16–22–102(5.7), C.R.S.2012 (emphasis added).
- "A person establishes a residence through an intent to make any place *or* dwelling his or her residence." § 16–22–105(3), C.R.S.2012 (emphasis added). In other words, "residence" is not limited to a "dwelling;" it can also be "any place."
- A person must register "within five business days after establishing an additional residence in any ... county within Colorado." § 16–22–108(1)(c), C.R.S.2012.
- A person "may establish multiple residences by residing in more than one place." § 16–22–102(5.7).

Taking these provisions together, we conclude that the General Assembly did not intend for the Registration Act to limit a "residence" to a traditional house or apartment. The statute's plain language does not limit "residence" to a traditional house or apartment—a "dwelling"—but, instead, includes "any place." A place could include a motor vehicle. Therefore, we conclude that defendant had fair notice that staying in his car may have triggered his registration duties, and he could have guided his conduct accordingly. The trial court did not err in

failing to hold that the Registration Act is unconstitutionally vague as applied to defendant.

### III. Sufficiency of the Evidence

¶ 22 Defendant next contends that the prosecution presented insufficient evidence to support his conviction beyond a reasonable doubt. Specifically, he asserts that the evidence insufficiently supports the jury's findings that (1) he established an additional residence in Garfield County and (2) he knowingly failed to register upon establishing the additional residence. We disagree with both contentions.

### A. Standard of Review

¶ 23 We review de novo the trial court's denial of a motion for a judgment of acquittal based on allegedly insufficient evidence. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). The evidence is sufficient if "any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt." *People v. Dunaway*, 88 P.3d 619, 625 (Colo.2004) (quoting *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999)).

### B. Analysis

#### 1. "Residence"

¶ 24 Defendant contends that the evidence was insufficient to prove that he established an additional residence in Garfield County because he did not have an address. He argues that sleeping in his car while parked at different locations each night did not trigger his duty to register because, without an address, "a car is not and cannot be a residence under the plain language of the statute." [5]

5. Defendant also contends that the prosecution presented insufficient evidence to support its alternative theories of residence; namely that the defendant established an additional residence at the rec center or at a trailer home. Because we conclude that the evidence sufficiently supports the jury's verdict on the theory that he established a residence in his car—which is the place, as it appears, that he usually used for habi-

¶ 25 As discussed above, a "residence" is "a place or dwelling that is used, intended to be used, or usually used for habitation." § 16–22–102(5.7). The Registration Act clearly does not limit residence to traditional structures, such as a house or apartment.

¶ 26 In his contention that a residence requires an address, defendant urges us to adopt an interpretation similar to that made by the Washington Court of Appeals in *State v. Jenkins*, 100 Wash.App. 85, 995 P.2d 1268 (2000). There, the court found that "residence," under the state's sex offender registration requirements, necessitated a residential address or a "fixed, regular nighttime residence." *Id.* at 1272; *see also id.* at 1271 ("Here, one reasonably could conclude that a person without a fixed, regular place to sleep does not have a residence under the terms of the statute.").

¶ 27 Other states have adopted similar interpretations. *See Twine v. State*, 395 Md. 539, 910 A.2d 1132, 1140 (2006) ("[W]e interpret 'residence' ... in such a way that it is synonymous with 'address' and 'residence address.' "); *State v. Iverson*, 664 N.W.2d 346, 353 (Minn.2003) ("[W]e interpret the statute to limit the residence reporting requirements to locations at which mail can be received...."). In each of those cases, however, the state's legislature had not defined "residence" in the registration act.[6] The courts were therefore forced to look to the plain meaning of the term, and found when "residence" and "address" were used interchangeably in the statute, they meant the same thing. *Twine*, 910 A.2d at 1138–40; *Iverson*, 664 N.W.2d at 352–53.

¶ 28 The Pennsylvania Supreme Court, on the other hand, rejected such an interpretation because its legislature had statutorily defined "residence." *Commonwealth v. Wil-*

tation—we do not need to reach the alternative theories.

6. The Minnesota statute emphasized "living" at an "address": "At least five days before the person starts *living* at a new *address* ... the person shall give notice of the new *living address* ..." *Iverson*, 664 N.W.2d at 351 (quoting Minn. Stat. § 243.166) (emphasis added).

**566**

*gus,* 40 A.3d 1201, 1206–08 (Pa.2012) (declining to follow *Twine* and finding statutory definition of "residence" is merely a "location" not requiring an address).

¶ 29 Here, as in Pennsylvania, the legislature has statutorily defined "residence." § 16–22–102(5.7). The Colorado definition includes a "place," which, like a "location" in Pennsylvania, does not require an address. Under the plain meaning of that definition, we conclude that a motor vehicle, if "used, intended to be used, or usually used for habitation," may be a residence, even if not parked in a fixed location. *Id.* We further conclude that the term "residence," as the Registration Act provides, does not require an address.

¶ 30 The record shows that defendant was continuously employed in Garfield County. He ate, slept, worked out, showered, banked, lived, and worked there for some fifty days in approximately two and one-half months. During that time, he slept in his car at various locations in and near the Parachute and Battlement Mesa communities and occasionally at his work site in Rifle.

■ ¶ 31 Viewing this evidence in the light most favorable to the prosecution, we find that the jury could have reasonably concluded that defendant used his car for habitation and therefore established an additional residence in Garfield County.[7] *See People v. Gibbons,* —— P.3d ——, —— (Colo.App. 2011); *People v. Griffiths,* 251 P.3d 462, 465 (Colo.App.2010) ("We do not reweigh the evidence or assess witnesses' credibility on appeal because the jury is the sole judge of witness credibility.").

### 2. "Knowingly"

¶ 32 Defendant also contends that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he "knowingly" failed to register in Garfield County. We disagree.

¶ 33 As a preliminary matter, we observe that the language of section 18–3–412.5(1)(a)

does not include any mens rea element. It reads, in pertinent part, as follows:

A person who is required to register pursuant to [the Registration Act] and who fails to comply with any of the requirements placed on registrants by [the Registration Act], including but not limited to committing any of the acts specified in this subsection (1), commits the offense of failure to register as a sex offender:

(a) Failure to register pursuant to article 22 of title 16, C.R.S.

Despite the absence of the word "knowingly" or any similar term in the text of the statute, a division of this court has held that the prosecution must prove beyond a reasonable doubt that the defendant "knowingly" failed to register. *People v. Lopez,* 140 P.3d 106, 110 (Colo.App.2005). The division was split on this issue in that case, with well-reasoned opinions by both the majority and dissent.

¶ 34 Consistent with *Lopez,* the trial court in this case instructed the jury that the elements of failure to register as a sex offender include that defendant "knowingly ... failed to register with the local law enforcement agency in each jurisdiction in which the person resided upon ... establishing an additional residence." Accordingly, in returning its guilty verdict, the jury found that defendant acted knowingly. Because, as discussed below, we conclude that sufficient evidence supports that component of the verdict, we need not determine whether we agree with the majority in *Lopez.*

■ ¶ 35 A person acts "knowingly" when "he is aware that his conduct is of such nature" as described by the statute defining the offense. § 18–1–501(6), C.R.S.2012. Here, the statute defining the offense, section 18–3–412.5, describes the nature of the conduct in part as "fail[ing] to comply with any of the requirements placed on registrants" by the Registration Act. One of those requirements, as set forth in section 16–22–108(1)(c), is registering "within five business days after establishing an additional residence." It follows that a defendant acts

---

7. While defendant may not have had a specific address that he could have provided Garfield County law enforcement, he could have given them a description and the license plate number

of the car in which he was living and described the vicinity or community in which he was parking at night to fulfill his registration requirements.

"knowingly" when he or she is aware that he or she failed to timely register upon establishing an additional residence. Knowledge of the duty to register therefore turns on knowledge of where one resides.

¶ 36 Knowledge for this purpose does not require a defendant to draw a legal conclusion based on a lawyer's technical understanding of the relevant statutes. Rather, the "defendant must know the facts that make his conduct illegal." *Staples v. United States,* 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). In *Staples,* the defendant was charged under the National Firearms Act, 26 U.S.C. §§ 5801–5872, with possession of a "machinegun," as defined in 26 U.S.C. § 5845(b), that had not been registered. 511 U.S. at 602, 114 S.Ct. 1793. The defendant testified that his weapon had never fired automatically when he possessed it and that he was ignorant of any automatic firing capability. *Id.* at 603, 114 S.Ct. 1793. The Supreme Court held that "to obtain a conviction, the Government should have been required to prove that [the defendant] knew of the features of his [weapon] that brought it within the scope of the Act." *Id.* at 619, 114 S.Ct. 1793; *see also Fabiano v. Armstrong,* 141 P.3d 907, 910 (Colo.App.2006) (explaining that federal offense of "knowingly possessing or controlling sexually exploitative material" requires "an awareness of the sexually explicit nature of the material, and ... knowledge that the visual depictions were in fact of minors engaged in that sexually explicit conduct" and is identical to the knowledge requirement under Colorado's sexual exploitation of a child statute). Thus, knowledge bears on the factual circumstances, not the legal conclusions.

¶ 37 Viewed in the light most favorable to the prosecution, the evidence at trial showed:

- Defendant was aware of his general duty to register. He admitted that he understood the Registration Act's requirements; he signed multiple notices attesting to this knowledge; and he acknowledged in writing that he was responsible for seeking legal counsel if he required further clarification concerning his obligations under the Registration Act.
- Defendant admitted he "knew that when [he] established an additional residency ... [he] needed to register." He knew that if he had multiple residences, he was required to register at each of them.
- Defendant went to Garfield County in search of a job and secured employment the day he arrived. He continued to search for better-paying employment and testified that if he had found a better-paying job, he would have registered in Garfield County.
- Defendant deposited his paycheck at a bank branch located in Garfield County.
- Defendant worked, ate, and slept in Garfield County for around fifty days in approximately two and one-half months, spending an average of five to six nights per week there.
- Defendant became a member of and visited the rec center frequently, often multiple times per day. He alternated paying for the membership with his coworker, but each paid for one full month at a time.
- For most of defendant's childhood, his father also used to work out of town. At those times, his father lived with defendant and defendant's siblings in a pop-up camper or truck.

We conclude that this evidence is sufficient to support a rational jury's finding that defendant knowingly failed to register upon establishing an additional residence in Garfield County.

### IV. Special Unanimity Instruction

¶ 38 Defendant contends that the trial court erred by failing to provide the jury with a special unanimity instruction. Although the court provided the general unanimity instruction at the close of its instructions, defendant argues that the prosecution never elected the particular act that gave rise to defendant's duty to register. Thus, without a special unanimity instruction specifically requiring the jury to agree on that act, the jury may have disagreed on the acts

the defendant committed despite reaching a guilty verdict. We disagree.

### A. Standard of Review

¶ 39 We review de novo whether the jury should have received a special unanimity instruction. *See People v. Torres,* 224 P.3d 268, 278 (Colo.App.2009); *see also Quintano v. People,* 105 P.3d 585, 592–93 (Colo.2005). Defendant timely raised this issue in the trial court. If the trial court committed error, we will reverse the conviction unless the error was harmless beyond a reasonable doubt. *Torres,* 224 P.3d at 278 (citing *Thomas v. People,* 803 P.2d 144, 154 (Colo.1990); *People v. Villarreal,* 131 P.3d 1119, 1128 (Colo.App.2005)).

### B. Analysis

¶ 40 A special unanimity instruction is required "where there is evidence of multiple acts, any one of which would constitute the offense charged." *Melina v. People,* 161 P.3d 635, 636 (Colo.2007). Where there is a reasonable likelihood that jurors may disagree upon which act a defendant committed, this instruction "require[s] jurors to agree on the specific act or series of acts on which their verdict is based." *Id.; see also Torres,* 224 P.3d at 278. However, if the crime with which the defendant is charged encompasses incidents occurring in a single transaction, no special unanimity instruction is required. *Torres,* 224 P.3d at 278.

¶ 41 Here, the act constituting defendant's offense was the failure to register with law enforcement authorities in Garfield County. His duty to register was triggered upon his establishing an additional residence in Garfield County. The different theories proffered regarding defendant's place of residence, whether in his car, in a trailer, or at the rec center, were merely incidents making up a single transaction—defendant's establishment of a residence in Garfield County. *See People v. Vigil,* 251 P.3d 442, 447 (Colo.App.2010) ("Generally, jurors need not agree about the evidence or theory by which a particular element is established."). Therefore, we hold that the trial court did not err in failing to give a special unanimity instruction.

### V. Custodial Interrogation

¶ 42 Defendant contends that his statements to the arresting deputies were obtained in violation of his *Miranda* rights and therefore should have been suppressed. We disagree.

### A. Standard of Review

¶ 43 In reviewing a motion to suppress statements due to an alleged *Miranda* violation, we defer to the trial court's factual findings and review de novo whether those facts establish that a suspect was in custody during the interrogation. *People v. Cowart,* 244 P.3d 1199, 1204 (Colo.2010).

### B. Facts

¶ 44 Approximately two and one-half months after defendant began working in Garfield County, a sheriff's deputy was dispatched to the rec center on a call about a suspicious man with a vehicle matching defendant's. The deputy located defendant's car in the rec center parking lot at approximately 5:00 p.m. As he approached, defendant was in the backseat of the car under a sleeping bag. The deputy asked defendant to exit the car and provide identification.

¶ 45 Approximately five minutes later, a second deputy arrived. Based on prior information he had received about defendant, the second deputy suspected that defendant was not properly registered as a sex offender in Garfield County. The deputies questioned defendant about his registration status and how long he had lived in Garfield County. Defendant began to appear upset. The second deputy attempted to reassure him, but defendant grew further agitated. Based on defendant's statements, the second deputy then placed him under arrest.

¶ 46 During the questioning prior to the arrest, defendant stood near the front of his car, three to five feet from the uniformed deputies. Both deputies were armed but neither drew his weapon at any point. They did not tell defendant he was free to leave, but both deputies communicated in normal tones and made no threats or promises. The trial court found that the entire encounter

lasted approximately seven minutes, though one of the deputies testified it lasted no more than fifteen to twenty minutes.

## C. Analysis

¶ 47 "To protect a suspect's Fifth Amendment right against self-incrimination, *Miranda* prohibits the prosecution from introducing in its case-in-chief any statement, whether inculpatory or exculpatory, procured by custodial interrogation, unless the police precede their interrogation with certain warnings." *Mumford v. People*, 2012 CO 2, ¶ 12, 270 P.3d 953, 956 (quoting *People v. Matheny*, 46 P.3d 453, 462 (Colo.2002)). The issue here is whether defendant was in custody while he was questioned by the deputies in the rec center parking lot.

¶ 48 A suspect is in custody for *Miranda* purposes where "a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action to the degree associated with a formal arrest." *Id.* at ¶ 13, 270 P.3d at 957 (quoting *People v. Hughes*, 252 P.3d 1118, 1121 (Colo. 2011)). The inquiry is objective; we cannot look to the subjective views of the officers or the defendant. *Id.* at ¶ 15, 270 P.3d at 957. We look to the totality of the circumstances surrounding the investigation. *Id.* at ¶ 13, 270 P.3d at 957. A non-exhaustive list of factors to consider includes the time, place, and purpose of the encounter; the words spoken by the officers to the defendant; the officers' tone of voice and demeanor; the length and mood of the interrogation; and whether the defendant was restrained or limited from movement in any way. *Id.* (citing *Matheny*, 46 P.3d at 465–66).

¶ 49 Here, the interrogation occurred in broad daylight and took no more than fifteen to twenty minutes. Defendant was not restrained or limited in movement. Although both deputies were uniformed, they spoke in normal tones and did not display their weapons. They did not threaten or accuse defendant. Considering the totality of the circumstances, we conclude that a reasonable person would not have found his or her freedom of action deprived to the degree associated with a formal arrest. *See, e.g., Mumford*, ¶¶ 16–21, 270 P.3d at 957–59

(finding defendant was not in custody during brief encounter in neutral location where no restraints were used and officers used conversational tone); *People v. Klinck*, 259 P.3d 489, 493–95 (Colo.2011) (finding defendant was not in custody where encounter lasted less than ten minutes, no restraints were used, and officers used conversational tone); *Cowart*, 244 P.3d at 1204–05 (finding defendant was not in custody during encounter in neutral location where no threats or restraints were used and officers used conversational tone).

¶ 50 Therefore, a *Miranda* advisement was not required prior to defendant's arrest, and we affirm the trial court's denial of his motion to suppress his statements to the deputies.

¶ 51 The judgment of conviction is affirmed.

Judge CARPARELLI and Judge FOX concur.