516 P.2d 308

**The STATE of Arizona, Appellee,**

**v.**

**George YANICH, Jr., Appellant.**

**No. 2275.**

Supreme Court of Arizona,
In Banc.

Nov. 19, 1973.

Rehearing Denied Jan. 8, 1974.

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman and Richard Klauer, Asst. Attys. Gen., Phoenix, for appellee.

Sherman R. Bendalin, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from jury verdicts and judgments of guilt to the crimes of offering to sell marijuana, § 36–1002.07 A.R.S., as amended 1961, and sale of a dangerous drug, to wit: LSD, § 32–1964(A)(7) and § 32–1975 A.R.S., as amended 1967, together with concurrent sentences of not less than six years nor more than ten years on each count.

The defendant raises the following questions on appeal:

1. Is the Arizona statute regarding marijuana unconstitututional because it classifies marijuana as a narcotic drug?

2. Was the defendant denied a right to speedy trial?

3. Was the defendant denied his right to represent himself by the actions of the administrator of the Maricopa County Jail in refusing to allow the defendant access to law books, telephone, witnesses, and in interfering with the private papers of the defendant concerning the conduct of the trial?

4. Did the trial court commit reversible error by not giving defendant's requested instruction regarding agency relationship?

5. Did the court abuse its discretion in not granting defendant's motion for new trial?

6. Is the detainer placed by the State of California valid?

The facts necessary for a determination of this matter on appeal are as follows. In December of 1968, an undercover agent of the Phoenix Police Department purchased ten tablets of LSD and made arrangements to purchase a kilo of marijuana from the defendant. The officer paid $50 for the tablets and turned over $110 for the marijuana. The marijuana was not delivered and the money was returned. On 16 January 1969, a criminal complaint was filed charging the defendant and two other co-defendants with the crimes of offering to sell marijuana and sale of dangerous drugs. The defendant was arrested in Nevada in January of 1969 on another charge. The defendant fought extradition and the proceedings were dismissed in Nevada on 30 July 1969. On 3 April 1970, defendant was arrested in California pursuant to the instant criminal complaint. Defendant fought extradition and arrived in Arizona on 13 June 1970. After a preliminary hearing at which time defendant was represented by counsel, the defendant was held to answer. In the Superior Court the defendant moved that his attorney be discharged and that he be allowed to proceed in propria persona. The motion was granted and the minute entries reflect:

"IT IS ORDERED appointing the Public Defender to aid, assist and advise defendant in the preparation for trial and trial of this matter.

"In reference to the use of the law library and the particular books named in the Motion,

"IT IS ORDERED taking this matter under advisement and the Court will have the Public Defender contact defendant in reference to the books."

Later, pursuant to further motion of the defendant, the court directed:

"The Court directs the Public Defender to furnish defendant the essential material and contact witnesses in preparation for trial and trial.

\*　　\*　　\*　　\*　　\*　　\*

"IT IS ORDERED defendant's Motion for Law Books is denied, subject to the

Public Defender's consultation with the defendant and what they feel is necessary for the preparation of the case."

Further motions were made by defendant concerning the restrictions being placed upon him by the jailors which the court denied, though the court did order:

"* * * Deputy Public Defender Oral Tucker has advised the Court that he will personally see that the Law books requested are furnished to defendant and IT IS ORDERED that the Sheriff shall not interfere with defendant's use of said books in preparation for his trial."

Defendant also asked and was granted a continuance of the trial date from September of 17 November 1970. From verdicts and judgments of guilt, sentences, and denial of motions for new trial, defendant appeals.

## IS THE ARIZONA MARIJUANA STATUTE UNCONSTITUTIONAL?

Defendant first contends that § 36–1002.07 A.R.S. is unconstitutional as a violation of the equal protection clause of the United States Constitution in that "to classify marijuana as an addictive drug flies in the face of the vast weight of medical knowledge on the subject." In rejecting a similar contention we have stated:

"The legislative intent in this State was to proscribe the use of marijuana, not to scientifically categorize it according to its composition and effect, and we believe there was a reasonable basis for the classification of marijuana with the narcotic drugs rather than the dangerous drugs." State v. Wadsworth, 109 Ariz. 59, 63, 505 P.2d 230, 234 (1973).

## DENIAL OF RIGHT TO SPEEDY TRIAL

Defendant next contends that he was denied his right to speedy trial. We disagree. We have stated:

"The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set out the criteria by which the speedy trial right is to be judged:

'* * * The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. [footnote omitted].' 407 U.S. at 530, 92 S.Ct. at 2191.

"Although not excluding other factors, the court identified four as pertinent: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. All these factors and others which may be pertinent must be weighed by the court together and no one factor is conclusive.

"The length of delay is perhaps the least conclusive of the factors, and where, as here, is substantial, acts merely as a triggering mechanism necessitating analysis of the other factors. Barker v. Wingo, supra. See United States ex rel. Stukes v. Shovlin, 464 F.2d 1211 (3rd Cir. 1972)." State v. Brannin, 109 Ariz. 525, 514 P.2d 446 (1973).

In the instant case the defendant left the jurisdiction shortly after the commission of the offenses charged. He resisted extradition in both Nevada and California. There was no demand by him that he be brought back and tried as soon as possible as was the case in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and once he was returned, much against his will, he was the cause of further delay.

Regardless of the confusion resulting from the attempt to extradite the defendant from Nevada, after extradition from California the State of Arizona proceeded diligently to try him. A reading of the transcript indicates no prejudice caused by the delay nor denial of defendant's right to speedy trial.

## INTERFERENCE WITH THE RIGHT TO REPRESENT HIMSELF

Defendant contends that his motion to proceed in propria persona was conditioned on the exercise of his rights upon "full access to the courts." It is defendant's position that the conviction must be set aside

because the conditions of this waiver of counsel and election to represent himself were not met. At one point in the proceedings the following transpired:

"Now I am aware of the problem we have here with the Sheriff's Department, of not having any facilities for the pro pers. However, this is not my fault. Until they decide to establish a facility there for the pro pers then they will have to escort me to the law library. And if they don't have a telephone they are going to have to escort me to a public telephone. It is as simple as that. I don't believe the court is justified in denying me these rights as counsel for the defense merely because the Sheriff's Department does not have a law library or public telephone in the jail as they do in other places. * * *"

And:

"THE COURT: Mr. Yanich, you know that when we first heard your motion with respect to the use of the law books and so on, you were aware at that time that the facilities in this State are not such as they are in the State of California and in the Los Angeles County Jail. Now they had a law library for you over there, didn't they?

"MR. YANICH: Yes, they did.

"THE COURT: Yes. And I am sure you are aware that in Arizona we do not have one that is available for you.

"MR. YANICH: That isn't my fault, your Honor.

"THE COURT: I am not saying it is.

"MR. YANICH: I am just trying to exercise my Constitutional rights.

"THE COURT: I am just stating this as a fact, that you are aware of the fact that facilities are not available here like they are in California. We have no law library in the County Jail. We have no private telephones in the County Jail for the use of the defendants who are representing themselves.

And it appears to me that this is one of the hazards that you accept when you defend yourself in this matter.

"MR. YANICH: I did not accept these hazards, your Honor. There is a law library here in this building, and there are private telephones in the building. The Sheriff's Department can bring me over here to these facilities. It isn't my fault that they don't have a law library in the County Jail.

"THE COURT: The court offered to appoint private counsel to represent you in this matter, and you have indicated that you want to represent yourself. I am still willing and will offer at this time to remove the Public Defender and appoint private counsel to represent you, because it is quite obvious that under the limited facilities which this State provides that we will not be able to escort you to the law library, and will not be able to furnish you with a private telephone. If you want to reconsider, I will appoint you private counsel on the matter.

"MR. YANICH: I will not reconsider, your Honor. I am exercising my Constitutional rights in defending myself. I have a difficult case, and there are a lot of issues that I have to raise before this court. I don't believe that private counsel, or the Public Defender, or anyone else can devote the necessary time and effort to do these things.

Further, there is no reason why the Sheriff's Department cannot take me to this building here. It isn't that far away, and to let me use the law library for two or three hours a day, or maybe not even that long, to prepare my case.

"THE COURT: I will direct the Public Defender to furnish you the essential material, Mr. Yanich. I am not going to direct him to furnish you a law library, and I am not going to direct the Sheriff to take you up to

the law library on a daily or even a weekly basis. They don't have the personnel to do so. It is difficult even to have them come over to the various courts, with their limited personnel and limited facilities. And we are not going to start, until the Board of Supervisors provides the facilities for us in this jail, we are not going to start escorting individual defendants over to the County Law Library.

As I indicated to you originally, we were not going to provide you with a legal education with the time here preceding your trial."

■ The Arizona Constitution reads as follows:

"Section 24. In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel * * *." Arizona Constitution, Art. 2, § 24.

And in Arizona an accused has a right to represent himself as well as to have an attorney. State v. Van Bogart, 85 Ariz. 63, 331 P.2d 597 (1958). This does not mean, however, that a defendant who waives his right to an attorney and exercises his right to represent himself has a unlimited right to books, witnesses, investigators, and other items that he may feel necessary in order to adequately represent himself. In the instant case the defendant was given a public defender to assist him. The record before this court indicates that books were provided for him and that the Public Defender's Office assisted defendant to the extent that it could, considering the attitude of the defendant in making unreasonable demands on the one hand, and, on the other, not communicating to the Public Defender concerning areas in which he could be of genuine help. It is also noted that defendant's activities were restricted at one time because he became a disciplinary problem.

■ While we agree that a person who represents himself must be given a reasonable opportunity to conduct his defense and reasonable access to law books and source materials necessary, we do not find in the instant case that unreasonable restraints were placed upon the defendant. A person has the right to represent himself but he does not have the right to expect that his representation will be effective. Indeed, experience shows that just the opposite is more likely to be the case. In addition, there are physical limitations that necessarily follow when the defendant is held in custody pending trial. By electing to represent himself, the defendant in custody may not expect to receive favored and privileged treatment even though the result may be that he is less effective as his own attorney. Neither do we believe that the defendant may attempt to place unreasonable conditions on his waiver of his right to counsel and then when he finds to his sorrow that he was not the lawyer he thought he was, assign the failure to comply with these conditions as a basis for overturning the trial. We find no error.

## WAS IT REVERSIBLE ERROR NOT TO GIVE DEFENDANT'S REQUESTED INSTRUCTION REGARDING AGENCY RELATIONSHIP?

Defendant next contends that it was reversible error to fail to give defendant's requested instruction regarding the agency relationship. Defendant requested the following instruction:

"If from the evidence you find that an individual has been requested to obtain a narcotic drug, and therefore undertook to act in the prospective purchaser's behalf rather than his own, and in so doing attempted to purchase the drug from a third person with whom he was not associated, then he is an agent and would not be a seller."

■ This is not a correct statement of the law and it would have been error for the court to give the instruction under the facts in the instant case:

"* * * For 'mere delivery' to be a defense, there must also be shown a lack of knowledge as to the illegal nature of the item passed and the jury so instruct-

ed as even a 'go-between' is guilty if he has knowledge of the illegality of the item he is transferring. * * *" State v. Robinson, 108 Ariz. 596, 599, 503 P.2d 817, 820 (1972). See also State v. Russell, 108 Ariz. 549, 503 P.2d 377 (1972); State v. Baltier, 109 Ariz. 96, 505 P.2d 556 (1973); State v. Jacobson, 15 Ariz.App. 604, 490 P.2d 433 (1971).

## MOTION FOR NEW TRIAL.

After the trial in this matter defendant, still representing himself, moved for new trial which motion was denied. Notice of appeal was filed, and new counsel was appointed to assist defendant. Upon motion, the appeal was suspended and the matter remanded to the Superior Court for a new hearing on defendant's motion for new trial. A five day hearing was held at which time defendant called the witnesses he would have called at the original trial as well as others concerning defendant's treatment while in jail prior to and during the trial.

Defendant contends that new and material evidence was presented which was not known by defendant prior to the trial and that the treatment he received while attempting to represent himself amounted to a denial of a fair and impartial trial.

■ The witnesses the defendant produced at the hearing on the motion for new trial were all known to him at the time of the trial. One was his brother-in-law and another a close friend who testified on behalf of the defendant at his motion for reduction of bond prior to the trial. There were no new witnesses. A new trial should not be granted to permit testimony from a witness whose identity was known by the defendant at the time of the trial. State v. Baker, 100 Ariz. 339, 414 P.2d 153 (1966); State v. Dixon, 7 Ariz.App. 457, 440 P.2d 918 (1968).

■ Defendant further contends, however, that he was prevented from properly subpoenaing his witnesses. The testimony of the attorney assigned to assist defendant indicates that the defendant did not allow the attorney to assist in this matter:

"Q And the defendant stated to you that he had a prospective witness, and you cannot recall him indicating to you what type of defense he intended to present at the time of trial?

"A Not specifically. Now as to witnesses, if I can, now you indicated that you wanted to subpoena some witnesses, and you wanted subpoena forms. Now I remember bringing up several subpoena forms for you because you had indicated that you wanted to do them yourself, and I also recall returning some of them, but I believe the ones that I returned you made out yourself, but I am not real sure of that."

And:

"Q And you did know the defendant was going to present an alibi defense at his trial, is that correct?

"A I was aware of the fact that you were thinking about it. You did not ever indicate that you definitely planned upon the five days. Now it came up and you said that you wanted Volume 17 of Arizona Revised Statutes, and I informed you I did not think I could get you a copy. And you wanted to know how you could work it without that volume, and I said, 'If you have any questions, let me know.' And I said, you know, that I could advise you right then that you had to, when you had to file notices. I believe that is how the alibi notice came up, not specifically that you mentioned at that time that you wanted an alibi witness."

And concerning the witness Kendall:

"Q Then you were aware that Mr. Kendall would have to be located prior to that date, is that correct?

"A I—now I don't believe you ever definitely indicated that you were

for sure going to call Mr. Kendall. You indicated that you wanted to discuss it with him, to talk to him and discuss whether or not you would call him."

By the time the subpoenas were given to the investigator for the Public Defender it was too late even though the testimony of the investigator indicates a diligent effort to serve the witnesses.

A review of the testimony on the motion for new trial, particularly the testimony of the so-called "alibi" witnesses indicates no error in denying defendant's motion for new trial.

## IS THE CALIFORNIA DETAINER VALID?

As to the detainer placed by the State of California, there is nothing in the record that would allow us to decide this matter. The question of the detainer is a matter peculiarly within the jurisdiction of the California courts.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.