579 P.2d 647 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Percy Lee RICE, Defendant-Appellant.
No. 76-929.
Colorado Court of Appeals, Div. II.
February 2, 1978.
Rehearing Denied February 23, 1978.
Certiorari Denied May 22, 1978.
*648 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Linda Palmieri Rigsby, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Madden & Strate, P.C., Robert L. McGahey, Jr., Denver, for defendant-appellant.
SMITH, Judge.
Defendant, Percy Lee Rice, appeals his conviction of twenty-one separate crimes, ranging from menacing with a deadly weapon to aggravated robbery. Several concurrent sentences were imposed, the longest of which is for a minimum of twenty years. We affirm.
On April 23, 1975, the defendant walked away from the Colorado State Hospital in Pueblo where he had been a patient. The next day, employees of the hospital discovered that two other men were also missing. By the time the defendant and the two other men were returned to custody, thirty-six hours later, four people had been bound, gagged, robbed, and threatened with death in Pueblo County, Colorado; two electricians working in a roadside ditch in Crowley County, Colorado, had been robbed and left in the ditch, their necks bound to a post with electrical wire; two trucks had been stolen in Pueblo and Crowley Counties; and three state patrolmen had been engaged in a shootout in Bent Countya shootout in which one of defendant's companions was shot in the head. Defendant was charged individually with all of the substantive crimes which were committed during this spree, as well as with conspiracy to commit the crimes. He was tried separately from his companions, and was convicted by a jury on all counts.
On appeal, defendant raises several arguments in favor of reversal. His major assertions are: (1) that, because of a defect in the indictment, the court did not have proper jurisdiction; (2) that the defendant's constitutional right to conduct a pro se defense was made illusory by the failure of the court to provide adequate time for legal research; and (3) that the evidence was insufficient to support the defendant's conviction.

Sufficiency of the Indictment
Defendant argues that his constitutional right to a trial in the proper county was *649 violatedand also that the district court never acquired jurisdiction over this matterbecause the indictments were defective. The defect, he asserts, stems from the fact that he was indicted by a Pueblo County Grand Jury for more than a score of offenses, despite the fact that only thirteen of them occurred in Pueblo County or the judicial district within which it is located.
Defendant directs our attention to Colo. Const. Art. II, Sec. 16, which states that every defendant shall have a right to a trial in the "county or district in which the offense is alleged to have been committed." He argues that the statutory scheme controlling grand juries, § 13-72-101 et seq. and § 13-73-101 et seq., C.R.S.1973, supports the proposition that such juries are restricted in their scope to dealing with events which transpire within their respective judicial districts.
From these authorities, the defendant concludes that any indictment alleging a criminal act outside of the judicial district where the grand jury was constituted not only violates his constitutional right to be tried in the proper county, but also fails to confer any jurisdiction upon the district court. He cites as authority for the latter proposition People v. Westendorf, Colo. App., 542 P.2d 1300 (1975) wherein we said that an insufficient indictment does not legally charge the crime. We disagree with defendant's arguments.
The constitutional provision cited by the defendant is a guarantee of his right to proper venue only. Vigil v. People, 135 Colo. 313, 310 P.2d 552 (1957). This provision is for the sole benefit of the accused and it may be waived. Vigil, supra. Because it involves venue and its effect may be altered by boundary changes, the provision has been the subject of some statutory elaboration. The General Assembly has determined that when a multiple crime, spanning several counties, is involved, the action is triable "in any county in which any one of the individual crimes could have been tried." Section 18-1-202(7), C.R.S.1973.
As to the sufficiency of a grand jury indictment, according to § 16-5-205, C.R.S. 1973, an indictment must comply with the applicable rules of criminal procedure. Crim. P. 7(a)(2)(III) states that an indictment, in order to be "deemed technically sufficient and correct," should state "that the offense was committed within the jurisdiction of the court or is triable therein." The indictment in the instant case satisfies this directive.
This brings us to the defendant's jurisdictional claim. Under Colo. Const. Art. VI, § 9, and § 18-1-201, C.R.S.1973, the criminal jurisdiction of the district courts is all embracing; it is not restricted either geographically or in scope. Hence, as there was no deficiency in the indictment here, the court was properly vested with jurisdiction over both the subject matter and the person of the defendant.
We therefore find no constitutional violation or jurisdictional defect arising out of the fact that this multiple-crime indictment was returned by a Pueblo Grand Jury, or that all of the offenses were tried in Pueblo County.

The Right to Conduct a Pro Se Defense
The defendant claims that his constitutional right to defend himself was violated in that he was only provided with access to a law library for a period of forty-five minutes, and that this satisfied neither his needs nor a court order that he be furnished with transportation to the law library.
The notion of the right to defend oneself is unquestioned in Colorado. Colo. Const. Art. II, § 16. A party may defend himself so long as the trial judge finds him competent to conduct his defense. See Moore v. People, 171 Colo. 338, 467 P.2d 50 (1970).
Under the Sixth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment, a defendant acting in a pro se capacity is guaranteed the right to make a "defense as we know it." Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d *650 562 (1975). The exact parameters of this right have as yet not been determined, but it is reasonably clear that it encompasses "access to law libraries or alternative sources of legal knowledge." See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (dealing with post-conviction access to the courts relative to the preparation of habeas corpus petitions by penitentiary inmates).
Of course, the exercise of this right necessarily operates within certain practical limitations. See Dyer v. People, 148 Colo. 22, 364 P.2d 1062 (1961); see also Lewis v. United States, 277 F.2d 378 (10th Cir. 1960). In State v. Yanich, 110 Ariz. 172, 516 P.2d 308 (1973) it was noted in a situation similar to the instant one that "there are physical limitations that necessarily follow when the defendant is held in custody pending trial." It is not the trial court's duty to remove all of the obstacles from the path of the party who has elected to represent himself. See Dyer, supra; Yanich, supra.
The defendant here was obviously hampered by his lack of expertise on the one hand and by the rules and procedures of court on the other. As a pre-trial detainee, however, he could not realistically have expected to have all of his desires, relative to the preparation of his case, satisfied on demand. See Dyer, supra.
On examining the record, we note that throughout the proceedings, the defendant either was represented by counsel, orafter he chose to represent himselfhad a "standby" counsel available "to provide secretarial assistance and provide . . . legal material if requested." Hence, the defendant was at no time deprived of "access to a law library or alternative source of legal knowledge." Rather, he had the functional equivalent of a law library in the form of "standby" counsel.
His argument that poor adherence to a court order to transport him to library facilities violated his constitutional rights is an attempt to elevate form over substance. See Lewis v. United States, supra (when the government undertakes the duty to place convenient circumstances before the defendant, and it breaches that duty, the court will weigh the prejudicial effect of the breach against other factors).
Accordingly, we detect no violation of either the Colorado Constitution or the United States Constitution in the circumstances of the defendant's attempt to defend himself.

Sufficiency of the Evidence
The defendant next asserts that the evidence was insufficient to support his conviction. We disagree.
As to the counts of assault, menacing, and robbery, the record shows that the defendant did not reserve any assertion of error in his motion for a new trial; nor did he make any claims on his motion for acquittal that the evidence was insufficient to link him to these crimes. Since we find no plain error with respect to these convictions, we do not address the issue of the sufficiency of the evidence relative to them. People v. Sanchez, 180 Colo. 119, 503 P.2d 619 (1972).
As to the counts for conspiracy which were raised in the motion for a new trialthe defendant, citing People v. Armijo, 176 Colo. 547, 491 P.2d 1384 (1971), asserts that the state failed to prove that any agreement or common design to effect an unlawful purpose had ever existed among the three alleged conspirators. He asserts further that even if an actual agreement need not be proven, a conspiracy conviction is nonetheless untenable, since the evidence failed to show that the defendant was the perpetrator of many of the substantive crimes.
Because of the nature of conspiracy and the fact that often there will be no witness to conspiratorial discussions, the evidence which proves the crime will often be circumstantial:
"Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed in terms to have that design and to pursue it by common *651 means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. . ." Abeyta v. People, 156 Colo. 440, 400 P.2d 431 (1965).
That the defendant and the two men who accompanied him were engaged in a conspiracy is amply supported by the record.
At the location of the first criminal incidenta house trailerthe testimony was indicative of an efficient division of labor. For example, one witness testified that he had been effectively forced into the trailer by the sight of the defendant holding a knife to the throat of the witness's friend. At that point, he went on, the two accomplices of the defendantwho had apparently been hidingcame up from behind the witness and forced him to the floor where they tied him up. Eventually, the same scenario played itself out two more times until, as one witness put it, "they were running out of room" in which to tie people up.
The evidence also supports the conclusion that later in the afternoon, when the defendant and his companions came upon two electricians in a roadside ditch, they were still acting as a unit. They held guns on the electricians, forced them to strip, bound their hands and necks with wire, and drove off together in the electricians' truck.
And, finally the details of the shoot out with the police are also indicative of coordinated actions on the part of defendant and his companions.
We conclude that the evidence was sufficient for the jury to convict the defendant of all the counts of conspiracy which were alleged. The fact that he may have not been shown to have personally committed each act is irrelevant. Abeyta, supra; see People v. Gill, 180 Colo. 382, 506 P.2d 134 (1973).
We have considered the other contentions raised by the defendant and we find them to be without merit.
Judgment affirmed.
RULAND and BERMAN, JJ., concur.