Opinion by JUDGE FURMAN
¶ 1 Defendant, David Lewis McCoy, appeals the judgment of conviction entered after a jury found him guilty of four counts of unlawful sexual contact. He contends, for the first time on appeal, that section 18-3-404(1)(g), C.R.S. 2014, proscribes only conduct occurring in a physician-patient relationship and as part of a medical exam or medical treatment. Under this interpretation of section 18-3-404(1)(g), he contends that the prosecution presented insufficient evidence to sustain his convictions because he is not a physician. Alternatively, he contends that the statute's plain terms are unconstitutionally overbroad and vague. Because we disagree with each of his contentions, we affirm his judgment of conviction.
I. The Charged Crime
¶ 2 The prosecution charged McCoy with unlawful sexual contact against two men, P.K. and G.M., arising out of separate incidents. According to the victims, McCoy told them that he worked in the television industry. He invited the victims to contact him if they wanted to work for him, and, eventually, they both did so. McCoy brought each victim to his home and asked them questions about their backgrounds.
¶ 3 During P.K.'s interview, McCoy asked about P.K.'s sexual history. McCoy also asked to weigh P.K. and instructed him to take off his clothes. He then checked P.K.'s pulse by touching his groin and, during that process, touched P.K.'s genitals. McCoy "assured" P.K. that he was a physician and encouraged him to relax.
*769 ¶ 4 During G.M.'s interview, McCoy asked about G.M.'s sexual fantasies. The next day, G.M. began training at McCoy's home for what he thought was work in the television industry. This training lasted about one and a half weeks. During the training, McCoy insisted on inspecting G.M.'s feet. He also checked G.M.'s pulse, touching his wrist and thigh. McCoy asked G.M. to lie on his stomach so that he could look at his back. When G.M. did so, McCoy pulled down G.M.'s underwear and "spread [his] butt open." McCoy had previously told G.M. that he was a pediatrician.
II. Sufficiency of the Evidence
¶ 5 We first consider whether the prosecution presented insufficient evidence to sustain McCoy's convictions because, as McCoy contends, section 18-3-404(1)(g), proscribes only conduct occurring in a physician-patient relationship and as part of a medical exam or medical treatment.
A. Appellate Review of Sufficiency Arguments
¶ 6 A threshold question in this case is whether a claim that raises insufficiency of the evidence for the first time on appeal is subject to plain error review. For reasons we will discuss, we disagree with the majority in People v. Lacallo, 2014 COA 78, 338 P.3d 442, and conclude that sufficiency of the evidence claims are not governed by plain error review. See People in Interest of S.N-V., 300 P.3d 911, 914 (Colo. App. 2011) (one division of the court of appeals is not bound by the decision of another division (citing People v. Wolfe, 213 P.3d 1035, 1036 (Colo. App. 2009) )).
¶ 7 Appellate review of the sufficiency of the evidence is grounded in the Due Process Clause of the Fourteenth Amendment, which "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ); see Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010) (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781 ). Appellate review of the sufficiency of the evidence ensures that a judgment of conviction does not violate the principle that a defendant be convicted only when each element of the offense was proven beyond a reasonable doubt. See Jackson, 443 U.S. at 317-18, 99 S.Ct. 2781 ; People v. Heywood, 2014 COA 99, ¶ 45, 357 P.3d 201 (Gabriel, J., specially concurring).
¶ 8 Although McCoy moved for judgment of acquittal in the trial court, his motion did not articulate the statutory claim he makes on appeal, which relies on his interpretation of section 18-3-404(1)(g). For this reason, the People urge us to review his sufficiency claim for plain error. By contrast, McCoy contends that plain error review is inapplicable because he was not required to preserve this argument in the trial court. We agree with McCoy.
¶ 9 Our disagreement with the People is based on the premise that appellate courts apply plain error review to claims of "error" that were forfeited, and McCoy did not forfeit our review of his sufficiency claims.
¶ 10 A criminal defendant forfeits appellate review of a trial error by not timely raising such an error in the trial court. People v. Miller, 113 P.3d 743, 748-49 (Colo. 2005). Our supreme court in Miller explained:
In United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court held that unpreserved constitutional claims are subject to plain error analysis. In so doing, the Court reaffirmed the fundamental precept governing relinquishment of unpreserved claims: " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " Id .
Id.
¶ 11 Colorado's plain error rule, Crim. P. 52(b), is an exception to the forfeiture doctrine and provides an appellate court a *770 limited power to correct errors that were forfeited because they were not timely raised in the trial court. See Olano, 507 U.S. at 731, 113 S.Ct. 1770. But, our supreme court has not held that a defendant forfeits appellate review of sufficiency claims that were not raised in the trial court. See, e.g., Morse v. People, 168 Colo. 494, 498, 452 P.2d 3, 5 (1969).
¶ 12 In Morse, the defendant raised several claims for the first time on appeal. Id. at 497-98, 452 P.2d at 5. One of these new claims alleged that there was insufficient evidence to support his conviction. Id . at 498, 452 P.2d at 5. Citing "the 'contemporaneous objection' rule and the requirement that error be preserved by raising the objection with particularity in the motion for a new trial," the court declined to address all of the new claims except one-the sufficiency claim. Id . (quoting Lucero v. People, 158 Colo. 568, 570, 409 P.2d 278, 279 (1965) ). The court addressed the defendant's new sufficiency claim "on the basis of the record now before [it]." Id .
¶ 13 Of course, as the special concurrence here points out, the Morse court did not articulate an exception to the forfeiture doctrine for sufficiency claims. But, the absence of such express language does not change the analysis that the court employed. And, that analysis was not affected by the defendant's failure to raise the claim at trial.
¶ 14 Consistent with Morse, divisions of this court have determined that a defendant need not preserve a sufficiency of the evidence claim by moving for a judgment of acquittal. See, e.g., People v. Randell, 2012 COA 108, ¶ 30, 297 P.3d 989 ("A defendant may challenge the sufficiency of the evidence on appeal without moving for a judgment of acquittal in the trial court."); People v. Garcia, 2012 COA 79, ¶ 35, 296 P.3d 285 ("[W]e reject the People's contention that Garcia failed to preserve his challenge to the sufficiency of the evidence because he did not move for a judgment of acquittal at trial."). The divisions in these cases did not apply a plain error standard of review. Randell, ¶ 29 ; Garcia , ¶ 34.
¶ 15 Before the majority's opinion in Lacallo, over thirty years had passed since two divisions of this court applied plain error review to a sufficiency claim. See People v. Harris, 633 P.2d 1095, 1099 (Colo. App. 1981) ; People v. Rice, 40 Colo.App. 357, 361, 579 P.2d 647, 650 (1978). Although the Lacallo majority premised the application of plain error review on the reliability of Harris and Rice, Harris and Rice are in tension with the supreme court's decision in Morse and applied plain error review based on a preservation requirement in Crim. P. 33(a) that no longer exists. See Lacallo, ¶ 11 ("[W]e join with Rice and Harris in applying the plain error standard of review...."). Because Harris and Rice relied on a now outdated version of Crim. P. 33(a), we discuss Harris, Rice, and Crim. P. 33(a) only to show that these cases and that rule no longer compel plain error review for sufficiency claims raised for the first time on appeal.
¶ 16 When Harris and Rice were decided, Colorado's rule governing motions for new trial, Crim. P. 33(a), required the party claiming error in the trial to "move the trial court for a new trial." Under that rule, "[o]nly questions presented in such motion [would] be considered by the appellate court on review." Id . Thus, under Crim. P. 33(a), as it existed until 1985, a defendant forfeited appellate review of a claim by not raising it in a motion for new trial.
¶ 17 Harris and Rice both noted a defendant's duty to preserve appellate claims in a motion for a new trial. Harris relied on Crim. P. 33(a) directly to support its decision to apply plain error review: "We note that defendant failed to raise [the sufficiency claim] in his motion for a new trial. The rule is that, absent plain error, such a failure bars consideration of the issue on appeal." 633 P.2d at 1099 (citing Crim. P. 33(a) and Crim. P. 52(b) ).
¶ 18 Although the Rice division did not cite Crim. P. 33(a), it applied plain error review primarily because the defendant failed to "reserve any assertion of error in his motion for a new trial." 40 Colo.App. at 361, 579 P.2d at 650.
¶ 19 But, Crim. P. 33(a) has not retained the preservation requirement that Harris and Rice relied on. To the contrary, now a *771 party "need not raise all the issues it intends to raise on appeal in [a motion for a new trial] to preserve them for appellate review." Crim. P. 33(a). Harris and Rice therefore do not reflect Colorado's contemporary preservation rules for sufficiency claims raised for the first time on appeal.
¶ 20 To be sure, Colorado's Crim. P. 29(a) allows a defendant to move for judgment of acquittal. This rule also allows the trial court to enter such a judgment. But it does not require either to do so to preserve a sufficiency claim for appellate review.
¶ 21 We recognize the broad scope of the contemporaneous objection rule, which the special concurrence points out. See Hagos v. People, 2012 CO 63, ¶ 14, 288 P.3d 116. And, we do not question that rule's vitality. See id . But, despite that rule, Colorado courts have reviewed sufficiency claims in the same way regardless of whether the defendant raised them at trial or for the first time on appeal. See, e.g., Morse, 168 Colo. at 498, 452 P.2d at 5 ; Randell, ¶ 29 ; Garcia, ¶ 34.
¶ 22 Having concluded that Colorado law contains no preservation requirement for sufficiency claims, we briefly address and distinguish the reasons offered by the Lacallo majority to apply plain error review to such claims.
1. Federal Preservation Law
¶ 23 The Lacallo majority correctly noted that federal courts apply plain error review to sufficiency claims. Lacallo, ¶ 13. But, unlike Colorado, federal courts require a defendant to move for judgment of acquittal under Fed. R. Crim. P. 29 to preserve a sufficiency claim. See, e.g., United States v. Delgado, 672 F.3d 320, 328 (5th Cir. 2012) (The defendant "did not move for a judgment of acquittal under Rule 29 on the grounds that the government had not presented adequate evidence of an agreement with co-conspirators, and she therefore failed to preserve this issue for appellate review."); United States v. Gaydos, 108 F.3d 505, 509 (3d Cir. 1997) (The defendant "did not preserve this issue for appeal by filing a timely motion for a judgment of acquittal."); see also United States v. Kimler, 335 F.3d 1132, 1141 (10th Cir. 2003) (same); United States v. Meadows, 91 F.3d 851, 854 (7th Cir. 1996) (same); United States v. White, 1 F.3d 13, 17 (D.C. Cir. 1993) (same). In federal court, then, if a defendant does not move for judgment of acquittal in the trial court, he or she forfeits appellate review of a sufficiency claim. See, e.g., Meadows, 91 F.3d at 854 (The defendant "concedes that he failed to move for a judgment of acquittal under Fed. R. Crim. P. 29, and that he therefore forfeited any challenge on appeal to the sufficiency of the evidence."); see also Olano, 507 U.S. at 731, 113 S.Ct. 1770 (A right "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (internal quotation marks omitted)).
¶ 24 Conversely, as noted, Colorado appellate courts do not require defendants to raise a sufficiency claim in a motion for judgment of acquittal to avoid forfeiting appellate review of that claim. Thus, they do not review for plain error sufficiency claims raised for the first time on appeal. See, e.g., People v. Roggow, 2013 CO 70, ¶ 13, 318 P.3d 446 (applying de novo review to a sufficiency claim without mentioning whether the claim was raised at trial); Randell, ¶ 30 ; Garcia, ¶ 35; see also People v. Duncan, 109 P.3d 1044, 1045 (Colo. App. 2004) ("[B]ecause a sufficiency of the evidence claim may be raised for the first time on appeal, we consider the merits of [the defendant's] argument."); People v. Peay, 5 P.3d 398, 400 (Colo. App. 2000) (addressing sufficiency of the evidence as to the charge of criminal impersonation despite the defendant's failure to preserve the issue in his motion for acquittal). Because federal law and Colorado law have different preservation requirements, federal opinions are, in our view, unpersuasive on this issue.
2. Other States
¶ 25 The Lacallo majority also relied on the fact that "many states apply a plain error standard of review to unpreserved sufficiency of the evidence claims." Lacallo, ¶ 14. But, as Judge Roma´n pointed out in his dissent, many other states also "address insufficiency of the evidence claims for the first time on *772 appeal without applying plain error review." Id . at ¶ 62 (Román, J., dissenting).
¶ 26 In any event, our analysis is limited to how Colorado courts have interpreted our state's preservation requirement with respect to a sufficiency claim.
3. Policies Supporting Plain Error Review
¶ 27 We also disagree with the three policy reasons that the Lacallo majority expressed for applying plain error review to sufficiency claims raised for the first time on appeal:
• Plain error review is reserved for " 'particularly egregious errors,' " id. at ¶ 15 (quoting Hagos, ¶ 23 );
• Requiring defendants to raise sufficiency issues before the trial court gives " 'the court an opportunity to correct any error,' " id. (quoting People v. Pahl, 169 P.3d 169, 183 (Colo. App. 2006) );
• Requiring defendants to raise sufficiency issues before the trial court "would obviate the need for the defendant to appeal any other issue concerning that charge." Id. at ¶ 16.
a. particularly egregious errors
¶ 28 First, Lacallo reasoned that
[p]lain error review reflects 'a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.' Plain error review allows the opportunity to reverse convictions in cases presenting particularly egregious errors, but reversals must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time.
Id. at ¶ 15 (quoting Hagos , ¶ 23 ).
¶ 29 Review of a sufficiency claim does not involve the evaluation of the impact that an egregious trial error may have on the final judgment of conviction. Unlike all other structural and nonstructural trial errors, which "do[ ] not constitute a decision to the effect that the government has failed to prove its case," Burks v. United States, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), when there is insufficient evidence, the conviction is vacated, and the charge is not subject to retrial. See id. at 18, 98 S.Ct. 2141 ("[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal.").
¶ 30 Consequently, unlike egregious trial errors, appellate review of sufficiency claims will never result in reversal. If the evidence is sufficient, then the claim fails, and the judgment is affirmed. But, if the evidence is insufficient, then the conviction is vacated and not subject to retrial. For this reason, we see no incentive for a defendant to forgo raising a sufficiency claim at trial-even one that involves a novel statutory interpretation-suffer a conviction and sentence, and raise the claim on appeal.
¶ 31 And, the method of applying plain error espoused by the Lacallo majority and the special concurrence here enables an appellate court to determine whether an error could have been obvious before determining whether an error occurred. If we were to reject the sufficiency claim on direct appeal under plain error review because the alleged error was not obvious at trial, the circumstances under which a Crim. P. 35(c) postconviction claim could provide relief is also not clear. If the law on which the error is based was not obvious at the time of trial, it is unlikely that a defendant could show deficient performance of trial counsel in a postconviction proceeding. By this process, questions of statutory interpretation, such as are at issue here and in Lacallo, could remain unresolved indefinitely, and by this reasoning, innocent defendants could also remain in prison indefinitely. See Jackson, 443 U.S. at 317-18, 99 S.Ct. 2781.
¶ 32 The special concurrence contends People v. Davis, 2015 CO 36, 352 P.3d 950 stands for the proposition that the supreme court applied "the plain error paradigm" to review the sufficiency of the evidence in a double jeopardy claim. We think this conflates two separate issues. Although the court reviewed the sufficiency of the evidence, it did so only to determine whether there were two factually distinct crimes in an unpreserved *773 double jeopardy claim. Davis, ¶¶ 40-41. The court did not apply plain error review to a sufficiency of the evidence claim. Id ., ¶ 33.
b. an opportunity to correct any error
¶ 33 Second, the Lacallo majority reasoned that requiring defendants to raise sufficiency claims before the trial court " 'conserve[s] judicial resources by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error.' " Lacallo, ¶ 15 (quoting Pahl, 169 P.3d at 183 (addressing purpose of contemporaneous objection rule in context of challenge to jury instructions)).
¶ 34 But, requiring a defendant to raise a sufficiency claim does not give the trial court an opportunity to correct any "error" and is not necessary to alert the court to the possibility of insufficient evidence because the purpose of the trial is to determine whether there is sufficient evidence to prove that the defendant committed a crime beyond a reasonable doubt. See United States v. Atkinson, 990 F.2d 501, 503 (9th Cir.1993) (In a bench trial "[a] motion to acquit is superfluous because the plea of not guilty has brought the question of the sufficiency of the evidence to the court's attention.").
c. obviate the need for the defendant to appeal any other issue
¶ 35 Third, the Lacallo majority reasoned that "[r]aising sufficiency before the trial court conserves judicial resources because a ruling that the evidence was insufficient would obviate the need for the defendant to appeal any other issue concerning that charge." Lacallo, ¶ 16. We do not challenge this principle. But, the importance of ensuring that a defendant may only be convicted when each element is proven beyond a reasonable doubt, Jackson, 443 U.S. at 317-18, 99 S.Ct. 2781, is why we disagree with the special concurrence's review of McCoy's sufficiency claim for plain error.
¶ 36 Having concluded that plain error review does not apply, we now turn to the merits of McCoy's sufficiency claim.
4. De Novo Review
¶ 37 When reviewing the sufficiency of the evidence de novo, we apply the substantial evidence test. See Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005). Under this test, we consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt. See id. ; People v. McGlotten, 166 P.3d 182, 188 (Colo. App. 2007). This standard requires us to give the prosecution the benefit of every inference that may fairly be drawn from the evidence. People v. Vecellio, 2012 COA 40, ¶ 12, 292 P.3d 1004.
¶ 38 Where a challenge to the sufficiency of the evidence requires us to interpret a statute, our goal is to effectuate the General Assembly's intent. People v. Davis, 2012 COA 56, ¶ 13, 296 P.3d 219. To determine that intent, we start with the statute's language, giving common words and phrases their ordinary meaning. Vecellio, ¶ 14. We must read and consider the statute as a whole, giving consistent, harmonious, and sensible effect to all its parts. Id . If the statutory language is clear and unambiguous, we will apply it as written, without resorting to further statutory analysis. Id .
B. Section 18-3-404(1)(g)
¶ 39 We now consider McCoy's contention that section 18-3404(1)(g) proscribes only conduct occurring in a physician-patient relationship and as part of a medical exam or medical treatment.
¶ 40 Section 18-3-404(1)(g) provides: "Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if ... [t]he actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices."
¶ 41 Section 18-3-404(1)(g)'s terms are clear and unambiguous. They apply to "any actor" and are not limited to "medical professionals" or those who claim to be medical professionals. When the General Assembly *774 has intended to restrict a crime to a specific class of actors, it has done so expressly. See, e.g., § 18-3405.5, C.R.S. 2014 (proscribing sexual assault on a client by a psychotherapist). Because section 18-3-404(1)(g) contains no such restriction, we decline to impose one. See People v. Herrera, 2014 COA 20, ¶ 10, 343 P.3d 1012 (declining to "judicially impose a hearing requirement where the legislature did not").
¶ 42 McCoy's reliance on People v. Terry, 720 P.2d 125 (Colo. 1986), for the proposition that section 18-3-404(1)(g) applies only to acts occurring within a physician-patient relationship is misplaced. In Terry, the supreme court interpreted what was then section 18-3403(1)(h), which provided, "[a]ny actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault ... if ... [t]he actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices." Id . at 126. The court concluded that a chiropractor, although he was not a "physician," could be convicted under that statute because, "in enacting section 18-3-403(1)(h) the legislature intended to prevent those persons in a position of trust by dint of their professional status from taking sexual advantage of their patients." Id . at 128.
¶ 43 In our view, Terry is unpersuasive here for two reasons. First, although the court concluded a chiropractor could be convicted under similar statutory language, it did not articulate a requirement that the actor have (or claim) any professional status or relationship with the victim. Rather, the court said, "[m]erely because one is not a 'physician' does not preclude that person from engaging in 'medical purposes.' " Id . Second, Terry involved a different statute, the sexual assault statute, which the legislature has since repealed and re-enacted with additional terms. See Ch. 171, sec. 18, § 18-3402(1)(g), 2000 Colo. Sess. Laws 699; id. at sec. 19, 2000 Colo. Sess. Laws 700 (repealing § 18-3-403). And we presume that the legislature intended to change the law when it amended that statute. See People v. Covington, 19 P.3d 15, 21 (Colo. 2001).
¶ 44 Likewise, we reject McCoy's argument that the unlawful sexual contact statute proscribes only conduct that occurs during "medical treatment or a medical examination." By its plain terms, section 18-3-404(1)(g) does not limit itself to these circumstances. In contrast, under section 18-3-402(1)(g), C.R.S. 2014, an actor commits sexual assault by knowingly inflicting sexual intrusion or sexual penetration on the victim if the "actor, while purporting to offer a medical service, engages in treatment or examination of a victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices." Thus, unlike section 18-3-402(1)(g), the statute before us does not require evidence showing that the actor "purport[ed] to offer a medical service."
¶ 45 Although McCoy points to section 18-3-404(1)(g)'s legislative history to support his proposed interpretation, we do not consider this history because the statute's terms are unambiguous. Candelaria v. People, 2013 CO 47, ¶ 12, 303 P.3d 1202.
¶ 46 Because we have concluded that section 18-3-404(1)(g) is not limited to conduct that occurs within a physician-patient relationship, or to conduct that occurs during medical treatment or a medical examination, we do not consider McCoy's argument that the statute's "knowingly" element applies to the restrictions. Guided by the statute's plain terms, we turn to the evidence supporting McCoy's convictions.
C. The Evidence
¶ 47 We now consider whether the prosecution presented insufficient evidence to sustain McCoy's convictions. We conclude that the prosecution presented sufficient evidence to sustain McCoy's convictions under section 18-3-404(1)(g) involving both P.K. and G.M. The jury could have concluded that the victims submitted to examinations because McCoy caused them to believe the examinations were part of a hiring process. The jury could also reasonably have concluded that McCoy examined the victims for his sexual gratification, not for bona fide medical purposes because both victims testified that *775 McCoy touched their intimate parts while he examined them.
III. Constitutional Challenges
¶ 48 We next consider whether section 18-3-404(1)(g)'s plain terms are unconstitutionally overbroad and vague. We conclude that they are not.
A. Preservation and Standard of Review
¶ 49 Because McCoy does not challenge section 18-3-404(1)(g) as applied to his conduct, we treat his challenges as facial challenges. The parties agree that McCoy did not preserve these claims by raising them in the trial court.
¶ 50 Colorado case law does not clearly dictate whether we should address McCoy's unpreserved constitutional claims. See People v. Allman, 2012 COA 212, ¶ 14, 321 P.3d 557 ("There are two lines of authority in Colorado on this question in criminal cases."). On one hand, People v. Cagle, 751 P.2d 614, 619 (Colo. 1988), and its progeny assert that it "is axiomatic that this court will not consider constitutional issues raised for the first time on appeal." People v. Devorss, 277 P.3d 829, 834 (Colo. App. 2011) (internal quotation marks omitted) (collecting cases). On the other hand, the supreme court and divisions of this court have discretionarily addressed unpreserved constitutional challenges. Id . (collecting cases).
¶ 51 Because McCoy does not challenge the statute as applied to him, we exercise our discretion to address his claims. Cf. People v. Veren, 140 P.3d 131, 140 (Colo. App. 2005) (Particularly when a defendant challenges a statute as applied, "it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.").
¶ 52 When reviewing a constitutional challenge to a statute, we presume that the statute is constitutional. Allman, ¶ 7. The challenging party must establish beyond a reasonable doubt that the statute is unconstitutional. Id .
B. Overbreadth
¶ 53 A statute is facially overbroad if, in addition to proscribing conduct that is not constitutionally protected, it sweeps into its proscriptions a substantial amount of constitutionally protected conduct. People v. Shepard, 983 P.2d 1, 3 (Colo. 1999).
¶ 54 Unless a defendant alleges that a statute impinges on a fundamental right guaranteed by the First Amendment, he or she does not have standing to argue that the statute is facially overbroad. People v. Lee, 717 P.2d 493, 495 (Colo. 1986).
¶ 55 We conclude that McCoy lacks standing to challenge section 18-3-404(1)(g) as facially overbroad. He contends that the "statute sweeps in a broad range of non-criminal and constitutionally protected conduct." And he offers examples of conduct that, he concludes, the statute proscribes, such as a sexual role-playing scenario in which one participant pretends to be a doctor. But, he does not cite any authority establishing that the activities in his examples implicate fundamental rights.
¶ 56 Instead, he argues that Ferguson v. People, 824 P.2d 803 (Colo. 1992), "recognizes that intimate relationships between consenting adults are generally protected by the rights to privacy and free association." But even Ferguson acknowledged that "it has never been the law that consenting adults, solely by virtue of their adulthood and consent, have a constitutionally protected privacy or associational right to engage in any type of sexual behavior of their choice under any circumstances." Id . at 808.
C. Vagueness
¶ 57 ''No person shall ... be deprived of life, liberty, or property, without due process of law ....'' U.S. Const. amend. V ; Colo. Const. art. II, § 25. The Government violates this guarantee by taking away someone's life, liberty, or property under a law so vague that it either fails to provide notice or ''authorize[s] and even encourage[s] arbitrary and discriminatory enforcement.'' Chicago v. Morales, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).
*776 ¶ 58 After we first issued our opinion in this case, the United States Supreme Court issued its opinion in Johnson v. United States, 576 U.S. ----, ----, 135 S. Ct. 2551, 2557, 192 L.Ed.2d 569 (2015). In a petition for rehearing, McCoy contends that the Court in Johnson altered the traditional approach to facial vagueness challenges; an approach that is currently used in Colorado. Johnson addressed whether the residual clause of the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii) (2012), violated the Constitution's prohibition of vague criminal laws.
¶ 59 Under the ACCA, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has ''three or more previous convictions for a 'violent felony,' a term defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another .' '' Johnson, 576 U.S. at ----, 135 S. Ct. at 2555 (emphasis added) (citation omitted). The italicized words of this definition have come to be known as the ACCA's residual clause. Id. at ----, 135 S. Ct. at 2556.
¶ 60 In the eight years prior to Johnson , the Supreme Court decided four different challenges to the application of the residual clause of the ACCA. See Sykes v. United States, 564 U.S. 1, 131 S. Ct. 2267, 180 L.Ed.2d 60 (2011) (holding that a conviction under Indiana's vehicle flight statute is a ''violent felony'' as the ACCA uses that term in the residual clause); Chambers v. United States , 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (holding that a conviction under Illinois' failure to report for penal confinement statute is not a ''violent felony'' under the residual clause of the ACCA); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (holding that a conviction under New Mexico's driving under the influence of alcohol statute is not a ''violent felony'' under the residual clause of the ACCA); James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (holding that a conviction under Florida's attempted burglary statute is a ''violent felony'' under the residual clause of the ACCA), overruled by Johnson, 576 U.S. ----, 135 S.Ct. 2551. Each time the Court addressed this clause, it sought to establish a workable standard by which other courts could decide a challenge to its application. See, e.g., James, 550 U.S. at 202-03, 127 S.Ct. 1586 (using the ''categorical approach,'' which looks ''only to the fact of conviction and the statutory definition of the prior offense'' and not to the ''particular facts disclosed by the record of conviction'') (citation omitted).
¶ 61 Under the categorical approach developed in James , the Court assessed ''how the law defines the offense and not ... how an individual offender might have committed it on a particular occasion.'' Johnson, 576 U.S. at ----, 135 S. Ct. at 2557. This approach was problematic, because it ''ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements.'' Id. at ----, 135 S. Ct. at 2557. And many of the crimes at issue could, on the face of the statute, be committed in a variety of ways, some violent and others nonviolent. Id. at ----, 135 S. Ct. at 2558. The Court recognized that ''the failure of 'persistent efforts to establish a standard' can provide evidence of vagueness,'' and therefore concluded the residual clause is vague. Id. at ----, 135 S. Ct. at 2558 (alteration omitted) (quoting United States v. L. Cohen Grocery Co., 255 U.S. 81, 91, 41 S.Ct. 298, 65 L.Ed. 516 (1921) ).
¶ 62 In reaching this conclusion, the Court noted that ''although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'' Id. at ----, 135 S. Ct. at 2560-61. Though the Court used this reasoning to overrule its prior decisions in the ACCA line of cases following James, 550 U.S. 192, 127 S.Ct. 1586, it did not explicitly overrule non-ACCA cases that decided vagueness challenges under the vague-in-all-its-applications standard. See Johnson, 576 U.S. at ---- n.2, 135 S. Ct. at 2580 n.2 (Alito, J., dissenting) (citing Morales, 527 U.S. at 79, 119 S.Ct. 1849 ; Chapman v. United States, 500 U.S. 453, 467-68, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) ; United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ;
*777 Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ).
¶ 63 Thus, courts that have addressed Johnson interpret it as standing for much narrower propositions than McCoy now contends. Some courts have interpreted Johnson as requiring that a law be struck down as vague only after a court has persistently tried and failed to establish a workable standard. See, e.g., State v. Haywood, 869 N.W.2d 902, 910 (Minn. Ct. App. 2015).
¶ 64 Other courts have applied Johnson only to address whether language similar to the ACCA's residual clause appearing in other federal or state provisions is vague. United States v. Mills, No. 3:15- CR-00055-MOC, 2015 WL 6672537, at *1 (W.D.N.C. Oct. 30, 2015) ; Commonwealth v. Rezendes, 88 Mass.App.Ct. 369, 37 N.E.3d 672, 679 (Mass. App. Ct. 2015). One court has held that although Johnson struck down the residual clause, it applies narrowly and does not ''call into question the constitutional validity of other statutes using the term 'substantial risk.' '' State ex rel. Richardson v. Green, 465 S.W.3d 60, 66-67 (Mo. 2015). But, Johnson has not been cited to hold as vague a law that is unlike the residual clause of the ACCA and subject to a single challenge. See Johnson, 576 U.S. at ----, 135 S. Ct. at 2558. We also decline to do so. Thus, we conclude that Johnson does not apply to this case.
¶ 65 Colorado has consistently applied the traditional vagueness doctrine: A statute is not void for vagueness if it fairly describes the conduct that it proscribes and persons of common intelligence can readily understand its meaning and application. People v. Shell, 148 P.3d 162, 172 (Colo. 2006) ; People v. Cross, 127 P.3d 71, 78 (Colo. 2006) ; People v. Hickman, 988 P.2d 628, 643 (Colo. 1999) ; Gessler v. Grossman, 2015 COA 62, ¶ 33, --- P.3d ---- ; see Dallman v. Ritter, 225 P.3d 610, 631 (Colo. 2010). To succeed on a facial challenge under the vagueness doctrine, the challenger must show that the statute is incomprehensible in all its applications. Morales, 527 U.S. at 78-79, 119 S.Ct. 1849 ; Shell, 148 P.3d at 172 ; Hickman, 988 P.2d at 643 ; People v. Baer, 973 P.2d 1225, 1233 (Colo. 1999) ; Gessler, ¶ 33.
¶ 66 McCoy does not contend that the statute is incomprehensible in all applications. Indeed, he concedes that the statute is not vague as applied to medical professionals. As a result, we disagree with his claim. See People v. Bondurant, 2012 COA 50, ¶ 35, 296 P.3d 200 ("[B]ecause [the defendant] has not satisfied his burden to prove beyond a reasonable doubt that the statute is incomprehensible in all applications, his facial challenge to the statute based on ambiguity of the term 'mental condition' necessarily fails.").
IV. Conclusion
¶ 67 The judgment is affirmed.
JUDGE NAVARRO concurs.
JUDGE WEBB specially concurs.