The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 14, 2023

## 2023COA119

**No. 20CA1291, *People v Gemelli* — Constitutional Law — Sixth Amendment — Right to Counsel — Right to Self-Representation — Waiver**

The defendant in this criminal case waived his right to counsel and proceeded pro se at trial.  On appeal, he argued that his waiver was invalid because it was induced by his continued detention and his desire to avoid a continuance.  And he contended that when it became apparent that his self-representation was ineffective, the trial court should have sua sponte intervened and ordered advisory counsel to take over the representation.

A division of the court of appeals holds that a defendant's waiver is not invalid merely because he is required to choose between waiving his right to counsel and another course of action — here, preserving a particular trial date.  As long as the choice is

not "constitutionally offensive," the waiver is not rendered involuntary. The division further concludes that even if the defendant's self-representation is ineffective, the trial court is neither obligated nor authorized to sua sponte override a defendant's valid waiver of the right to counsel and require that he be represented by counsel.

COLORADO COURT OF APPEALS                                   **2023COA119**

Court of Appeals No. 20CA1291
Boulder County District Court No. 17CR39
Honorable Norma A. Sierra, Judge
Honorable Bruce Langer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Timothy Mark Gemelli,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
Dailey and Dunn, JJ., concur

Announced December 14, 2023

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      A jury found defendant, Timothy Mark Gemelli, guilty of sexually assaulting his daughter and four of her friends. On appeal, he raises several claims relating to his decision to proceed pro se at trial.

¶ 2      His primary claim is that he did not validly waive his right to counsel because he was forced to choose between proceeding with counsel and preserving a trial date. We conclude that as long as the choice presented is constitutionally permissible — as it was here — a defendant's waiver is not involuntary merely because he must choose between waiving his right to counsel and another course of action. We therefore uphold the validity of the waiver.

¶ 3      And because we reject Gemelli's other claims as well, we affirm the judgment of conviction.

## I.    Background

¶ 4      In January 2017, Gemelli's then-twenty-year-old daughter reported to police in Colorado that Gemelli had sexually abused her for about seven years, beginning when she was six years old. Ultimately, four of the daughter's childhood friends reported similar sexual abuse by Gemelli during the same time period.

¶ 5 Just before her disclosure to Colorado authorities, Gemelli's daughter reported earlier abuse to police in Louisiana, where the family lived before moving to Colorado. Gemelli was charged in Louisiana with one count of aggravated incest. In early 2019, a jury acquitted him of the charge.

¶ 6 Following the trial in Louisiana, Gemelli was transferred in custody to Colorado, where prosecutors charged him with five counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse and one count of aggravated incest.[1] The court appointed a lawyer to represent him. In July 2019, Gemelli entered not guilty pleas, and trial was scheduled for December 9.

¶ 7 A few months later, Gemelli filed a motion to proceed pro se with an appointed "co-counsel" or to have substitute counsel appointed. The court held a hearing under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010), determined that Gemelli's disagreement with his lawyer did not amount to a complete breakdown in communication, and ruled that Gemelli was not entitled to substitute counsel. The court then provided a standard advisement

---

[1] A charge of enticement of a child was dismissed before trial.

pursuant to *People v. Arguello*, 772 P.2d 87 (Colo. 1989), and discussed with Gemelli the risks of proceeding pro se, which included the complicating factor of his incarceration. Gemelli responded that being in custody presented a "real dilemma" because if he could "bond out," he would not "have a problem" — he could afford to hire a lawyer and "it would make things much easier." The court acknowledged that Gemelli had requested a bond reduction but advised him to "make [his] decision [whether to proceed pro se] assuming it's not going to happen." After further consideration, Gemelli withdrew his request to proceed pro se.

¶ 8    On November 4, approximately a month before the scheduled trial date, the parties appeared for a hearing on pending motions, including Gemelli's motion to reduce bond. Defense counsel explained that he needed a continuance but that Gemelli would not agree to one if he had to remain in custody. According to counsel, a reduction in bond "would obviate that issue"; however, if the court denied the motion, Gemelli would likely elect to proceed pro se to preserve the December 9 trial date. After hearing argument, the court denied the request to reduce bond.

¶ 9  Gemelli immediately informed the court that he would "appear pro se and go forward." The court reiterated its warning about the risks of self-representation, to which Gemelli responded,

> I feel like I don't have much choice. You won't modify my bond and give me the opportunity to prepare and defend myself, you know. And I'm just not prepared to sit here for another nine months. I've been in jail going on three years for false allegations, and I don't have much choice.

The court then asked Gemelli, "Is it your decision to represent yourself?" When Gemelli answered, "Yes, Your Honor," the court dismissed Gemelli's lawyer. At Gemelli's request, the court appointed advisory counsel, but with the caveat that advisory counsel was unlikely to be "adequately prepared to assist [him]" given that trial was starting in just over a month. Gemelli decided to "move forward."

¶ 10  The trial ran for six days, during which time twenty-one witnesses, including Gemelli, testified. At no time did Gemelli seek reappointment of counsel or request that advisory counsel take over the representation. After deliberating for about half a day, the jury returned guilty verdicts on all counts.

¶ 11    On appeal, Gemelli contends that (1) he did not validly waive his right to counsel; (2) the trial court's errors, the prosecution's misconduct, and jail officials' interference with his preparation together deprived him of his right to self-representation; (3) the trial court erred by not requiring advisory counsel to take over the representation during trial; and (4) the trial court erred in responding to a jury question during deliberations.

## II.    Waiver of the Right to Counsel

¶ 12    Gemelli first argues that his waiver of his right to counsel was invalid because it was equivocal, conditional, and involuntary.

### A.    Legal Principles and Standard of Review

¶ 13    The United States and Colorado Constitutions guarantee criminal defendants the right to the assistance of counsel.  *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  Implicit in the right to counsel is the equally fundamental right of self-representation.  *See Faretta v. California*, 422 U.S. 806, 819 (1975).  "Honoring these contrasting rights has been a persistent challenge for courts" because the "trial court can commit reversible error by either improperly granting a defendant's request to proceed pro se — thereby depriving the defendant of the right to counsel — or by

denying the defendant's right to self-representation." *People v. Lavadie*, 2021 CO 42, ¶ 24; *see also United States v. Moya-Gomez*, 860 F.2d 706, 732-33 (7th Cir. 1988) ("No matter what decision the district court ultimately makes — whether to honor the defendant's request [to proceed pro se] or to deny it — the defendant is likely to appeal.").

¶ 14     Before a defendant may proceed pro se, he must first waive his right to counsel. *Lavadie*, ¶ 25. A defendant's waiver of counsel is valid only if the request to proceed pro se is unequivocal and unconditional, *see People v. Johnson*, 2015 COA 54, ¶ 23, and is made knowingly, intelligently, and voluntarily, *People v. Davis*, 2015 CO 36M, ¶ 15.

¶ 15     The decision to waive counsel can be voluntary even if it is not "entirely unconstrained." *Moya-Gomez*, 860 F.2d at 739. A criminal defendant may be required to choose between waiver of the right to counsel and another course of action as long as the choice presented is not "constitutionally offensive." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). Thus, a waiver cannot be valid if it is "executed under the pretense of an impermissible choice

between constitutionally protected rights." *Bergerud*, 223 P.3d at 693.

¶ 16    Whether a defendant validly waived his right to counsel is a mixed question of fact and law, meaning we defer to the trial court's factual findings if supported by the record but review de novo the legal question of whether the facts establish a valid waiver. *See Lavadie*, ¶ 22.

## B.    Analysis

¶ 17    To start, we see nothing equivocal or ambiguous about Gemelli's waiver of his right to counsel. As soon as the trial court denied his motion for a bond reduction, Gemelli, unprompted, said he wanted to proceed pro se. When the court warned that advisory counsel might not be "comfortable in representing [him] in just over a month," Gemelli corrected the court, confirming that he was "not looking for them to represent" him because he was "going to represent himself." Each time the court answered one of Gemelli's questions, Gemelli reiterated his intent to proceed pro se. *Cf. People v. West*, 2019 COA 131, ¶¶ 27-28 (the defendant's request was not unequivocal where he told the court he wished to proceed pro se but did not "wish to completely waive [his] right to counsel");

7

*People v. King*, 121 P.3d 234, 237 (Colo. App. 2005) (the defendant's waiver was not unequivocal where he told the court he would proceed pro se "against his will").

¶ 18 Next, even assuming Gemelli's request to proceed pro se was contingent on the court denying his motion for bond reduction — in other words, he wanted to proceed pro se only if he remained incarcerated — the request was not impermissibly conditional. The problem with a conditional waiver arises when the defendant's request to represent himself is contingent on the occurrence of a particular circumstance that does *not* occur. In those situations, when the condition precedent fails to materialize, the court should assume that the defendant no longer wishes to waive his right to counsel.

¶ 19 In *People v. Moody*, 630 P.2d 74, 79 (Colo. 1981), for example, the defendant said he wished to proceed pro se, but his "desire to represent himself was contingent upon the granting of a motion for mistrial." Thus, when the trial court denied the motion for mistrial, it also properly denied the defendant's request to proceed pro se. *Id.* Similarly, in *People v. Waller*, 2016 COA 115, ¶ 29, the defendant repeatedly asked to proceed pro se, but he "continually

8

conditioned his request . . . on the appointment of advisory counsel." Because the trial court did not abuse its discretion by denying the defendant's request for advisory counsel, *id.* at ¶¶ 36, 45, it also did not err by denying his conditional request to proceed pro se, *id.* at ¶¶ 42, 48. And in *People v. Abdu*, 215 P.3d 1265, 1268 (Colo. App. 2009), the defendant asked to proceed pro se, but his "requests were linked to his . . . insistence on [an earlier] trial date." After the trial court granted defense counsel's motion to continue the trial, the defendant "left no doubt he wanted representation of counsel at any later trial." *Id.* Thus, because the defendant's request to proceed pro se was equivocal and conditional, the trial court "acted appropriately" in preserving the defendant's right to counsel. *Id.* at 1269.

¶ 20 But Gemelli's request to proceed pro se was conditioned on the occurrence of an event that *did* occur — the denial of his bond request. So the only question at that point was whether, having been denied a reduction in bond, Gemelli knowingly, intelligently, and voluntarily waived his right to counsel.

¶ 21 Gemelli does not dispute that his waiver was knowing and intelligent. But he argues that his waiver was involuntary because

9

he had to choose between constitutionally protected rights: if he opted to exercise his right to counsel and continue with his appointed lawyer, he would have to forgo his right to the effective assistance of counsel. The record does not support that argument.

¶ 22 In October, at the *Bergerud* hearing, appointed counsel notified the court that he would "probably . . . have to ask for a continuance of the trial." The court appeared amenable to the request, telling Gemelli that "if [appointed counsel] think[s] there needs to be a continuance th[en] there probably needs to be a continuance." At the motions hearing in November, counsel confirmed that if he remained as counsel, he would move for a continuance based on the voluminous discovery from the Louisiana trial. The court did not address the possibility of a continuance because Gemelli elected to proceed pro se on the scheduled trial date.

¶ 23 Thus, Gemelli misstates his choice. The choice was not to proceed with an ineffective lawyer or to proceed pro se. He could have proceeded with appointed counsel and consented to a continuance so that counsel would have been adequately prepared

for trial. But, as Gemelli explained to the court, he would not agree to a continuance if he remained in custody.

¶ 24    Gemelli counters that this resolution would have presented a different constitutionally impermissible choice — his right to counsel versus his right to a speedy trial. But the record does not support that argument either. Because counsel did not ask for a new trial date, there is no evidence in the record that a continuance would have resulted in a violation of Gemelli's constitutional right to a speedy trial. "The constitutional right to a speedy trial attaches with the filing of a formal charge." *People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989). The prosecution charged Gemelli by criminal complaint on April 16, 2019. A delay in bringing the defendant to trial is not constitutionally significant until it approaches one year. *See People v. Sandoval-Candelaria*, 2014 CO 21, ¶ 36. Therefore, even a continuance of up to four months[2] would not have created "a

_____

[2] On the day the jury returned its verdict, Gemelli made a record of some objections to the trial court's rulings. One objection was that he was forced to choose between going to trial in May 2020 or proceeding pro se. But we see nothing in the record to substantiate his claim that counsel would have requested, and the court would have granted, a continuance of the trial to May 2020.

11

dilemma of constitutional magnitude." *Pazden v. Maurer*, 424 F.3d 303, 319 (3d Cir. 2005) (citation omitted).[3]

¶ 25    To be sure, Gemelli faced a difficult decision. He could legitimately have perceived both of his options — continue with counsel but agree to a continuance or proceed pro se and maintain the trial date — as less than ideal. But because that choice was not "constitutionally offensive," *Maynard*, 545 F.2d at 278, the fact that Gemelli had to choose one of those options did not render his waiver of the right to counsel involuntary. *See Arguello*, 772 P.2d at 94 (a defendant having to choose between continuing with counsel about whom he has expressed dissatisfaction and proceeding pro se does not render a waiver of the right to counsel involuntary); *Moya-Gomez*, 860 F.2d at 739 (fact that the defendant opted to proceed pro se only because trial court froze his assets and he could no longer pay his counsel of choice did not render his waiver of the right to counsel involuntary); *State v. Modica*, 149 P.3d 446, 450-51

---

[3] A continuance might not have affected Gemelli's statutory speedy trial rights either. Gemelli was arraigned on July 26, 2019, so the speedy trial deadline was January 26, 2020. The record does not definitively establish that trial could not have been continued to a date within the statutory speedy trial period.

(Wash. Ct. App. 2006) (fact that the defendant had to choose between a continuance and proceeding pro se did not render his waiver of the right to counsel invalid); *State v. Panzera*, 652 A.2d 136, 138-39 (N.H. 1994) (same as *Modica*); *cf. People v. Martinez*, 188 Colo. 169, 172, 533 P.2d 926, 928 (1975) (guilty plea was not involuntary where trial court increased the defendant's bond just before he elected to forgo trial and plead guilty).

¶ 26    For these reasons, we conclude that Gemelli validly waived his right to counsel.

### III.    Denial of the Right of Self-Representation

¶ 27    Gemelli argues that even assuming a valid waiver, through a plethora of trial court errors, continuous prosecutorial misconduct, and interference by jail officials, he was denied his right of self-representation.

### A.    Legal Principles and Standard of Review

¶ 28    As noted, a defendant has a constitutional right to represent himself in criminal proceedings.  *See Faretta*, 422 U.S. at 821.  The gravamen of this right is the right of the defendant "to have his voice heard."  *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).  Thus, in determining whether the defendant's right of self-

13

representation has been respected or denied, the focus is on whether the defendant was permitted to "present his case in his own way." *Id.* at 177. In other words, when a defendant asserts a violation of his right to represent himself, the proper question is whether the trial court appointed counsel despite a valid request to proceed pro se or allowed standby counsel (or some other third party) to take over management of the case to such a degree that the defendant's right to "speak for [him]self" has been eradicated. *Id.*; *see also West,* ¶ 19.

¶ 29 Whether a defendant has been denied his right of self-representation is a question of law that we review de novo. *See West,* ¶ 17. If a trial court improperly deprives the defendant of this right, the error is structural. *Id.*

### B. Analysis

¶ 30 Like the defendant in *West, see id.* at ¶ 20, Gemelli contends that trial court errors, prosecutorial misconduct, and interference by jail officials deprived him of his right of self-representation, specifically alleging that

- some of the discovery the prosecution provided was untimely and some was not in a "usable format";

14

- the court did not allow Gemelli sufficient time to prepare for trial;

- the court erred by denying Gemelli's motion for a bill of particulars;

- the prosecutor requested, and the court threatened, the imposition of time limits on cross-examination;

- during cross-examination, the prosecutor lodged, and the court sustained, meritless objections to Gemelli's questions;

- the court did not require the prosecution to keep certain witnesses available under its subpoena so that Gemelli could examine those witnesses at his convenience;

- the court erred by refusing to allow Gemelli to elicit certain testimony that purportedly revealed witnesses' biases or otherwise undermined the prosecution's case;

- the prosecutor improperly objected to Gemelli's leading questions during his examination of a detective;

- during closing argument, the prosecutor lodged, and the court sustained, meritless objections;

- the court erred by terminating Gemelli's closing argument after he told the jury that he had been acquitted at trial in

Louisiana and then, in response to the prosecutor's objection, told the jury that "the problem through the trial" was that he could not "get [his] evidence in";

- the trial court was biased against Gemelli; and

- jail officials limited his access to the library, his investigator, and his advisory counsel.

### 1. The Alleged Trial Court Errors and Prosecutorial Misconduct Do Not Implicate Gemelli's Right of Self-Representation

¶ 31 Trial court errors and prosecutorial misconduct (including discovery violations) do not implicate a defendant's right of self-representation because, as we have explained, that right is violated only when the court prevents the defendant from conducting his own defense. *See id.* at ¶¶ 22, 24. Here, Gemelli controlled the organization and content of his own defense, filed motions, argued the law (sometimes successfully), questioned jurors during voir dire, cross-examined witnesses (for over three hours, in one instance), gave an opening statement and a closing argument, tendered jury instructions, and participated in bench conferences throughout the trial. *See McKaskle,* 465 U.S. at 174-75. In short, Gemelli "litigated

16

his case to a jury representing himself, which is precisely what he requested." *West*, ¶ 26.

¶ 32 To the extent Gemelli asks us to analyze all of the alleged trial court errors and instances of prosecutorial misconduct as violations of his constitutional rights to present a defense and to a fair trial, we decline to do so. Gemelli elected to "couch[] all arguments within the constitutional right to self-representation," *id.* at ¶ 21, presumably because any error would be structural. As a result, he has not alleged, much less demonstrated, that any particular error or defect affected his substantial rights and necessitates reversal. *See* Crim. P. 52(a).[4] In this way, his arguments concerning other alleged constitutional violations are undeveloped, so we decline to address them. *See People v. Cuellar*, 2023 COA 20, ¶ 44.

### 2. Jail Officials' Alleged Interference With Gemelli's Right to Prepare and Present a Defense

¶ 33 However, we separately address Gemelli's argument that jail officials interfered with his ability to present a defense because that

---

[4] For the first time in his reply brief, Gemelli argues that certain of the court's evidentiary rulings prejudiced him. But we do not consider arguments made for the first time in a reply brief. *See People v. Allman*, 2012 COA 212, ¶ 10 n.2.

17

claim is generally cognizable as an alleged violation of the right of self-representation. *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (prison officials must facilitate an incarcerated defendant's right of access to the courts), *abrogated in part by Lewis v. Casey*, 518 U.S. 343, 354 (1996).

¶ 34     A pro se criminal defendant has a constitutional right to prepare and present a defense. *People v. Rice*, 40 Colo. App. 357, 360, 579 P.2d 647, 649 (1978). The "exact parameters of this right have as yet not been determined," but courts generally agree that it encompasses a right to reasonable, but not unlimited, access to a law library or alternative sources of legal knowledge. *Id.* at 360, 579 P.2d at 650.

¶ 35     Gemelli contends that jail officials interfered with his access to the facts of his case by failing to give him sufficient time to review discovery and prepare for trial and by sometimes denying his investigator entry to the jail. And, he says, jail officials interfered with his access to the law by limiting his time in the law library and his time with advisory counsel.

¶ 36     We will assume that Gemelli preserved this claim, even though his primary argument is that he did not have enough time to

18

prepare for trial, a problem that could have been remedied by consenting to a continuance of the trial date, which he refused to do. We will also assume that we review this claim de novo. *Cf. Rios-Vargas v. People*, 2023 CO 35, ¶ 19 (reviewing de novo the defendant's claim that the government violated his constitutional right to present a defense).

¶ 37    As we understand Gemelli's argument, he contends that he had a right to spend hours each day in the law library (and in the evenings after trial) and to meet with his investigator and advisory counsel at his convenience, including in court after trial concluded for the day. But an incarcerated defendant who elects to proceed pro se necessarily exercises his right to present a defense "within certain practical limitations," and he cannot "realistically . . . expect[] to have all of his desires, relative to the preparation of his case, satisfied on demand." *Rice*, 40 Colo. App. at 360, 579 P.2d at 650.

¶ 38    More problematically, Gemelli fails to explain how his limited access to the law library, his investigator, and his advisory counsel impaired his ability to represent himself at trial. A defendant alleging that jail officials interfered with his right of self-

representation must show "actual injury" — that is, he must demonstrate that the limitations arising from the conditions of confinement "hindered his efforts to pursue" his defense. *Lewis*, 518 U.S. at 351; *see also State v. Fernandez*, 758 A.2d 842, 852 (Conn. 2000) (an incarcerated pro se defendant must show that the denial of access to a law library hindered his efforts to conduct his own defense); *cf. Graham v. Maketa*, 227 P.3d 516, 518 (Colo. App. 2010) (to establish a violation of his right to access the courts, an incarcerated plaintiff must show actual injury or harm from lack of prison resources). It is not enough to simply allege that he needed more time to review discovery or to confer with his investigator and advisory counsel; Gemelli must demonstrate that his presentation at trial would have been different if he had had more time to prepare or greater access to the library. *See Fernandez*, 758 A.2d at 852 (explaining that the pro se defendant must show that if he had been afforded access to a law library, he would have "proceeded differently or pursued an alternative defense strategy").

¶ 39     Because Gemelli has failed to show actual injury or harm, we reject his claim that jail officials interfered with his right of self-representation.

## IV. Termination of Gemelli's Self-Representation

¶ 40      Next, Gemelli says that because he proved to be wholly ineffective as his own advocate, the court was obligated, at some point during the trial, to override his right of self-representation and require that advisory counsel take over as his lawyer.

¶ 41      Contrary to Gemelli's assertion on appeal, neither he nor the prosecutor ever asked the trial court to terminate his right of self-representation and order advisory counsel to represent him. Regardless, under any standard of review, this claim fails.

¶ 42      The State may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Faretta*, 422 U.S. at 807; *People v. Romero*, 694 P.2d 1256, 1264 (Colo. 1985) ("The right of self-representation . . . is personal to the defendant and may not be abridged by compelling a defendant to accept a lawyer when he desires to represent himself."). "[I]t is the defendant who must decide whether it is to his advantage to have counsel in his particular case." *Romero*, 694 P.2d at 1264.

¶ 43      Still, the right of self-representation is not absolute. *Lavadie*, ¶ 30. The trial court can terminate the defendant's self-

representation "if the defendant deliberately engages in 'serious and obstructionist misconduct.'" *Id.* (quoting *Faretta*, 422 U.S. at 834 n.46).

¶ 44    But there is no authority for the proposition that a trial court can sua sponte terminate a defendant's self-representation merely because he turns out to be an ineffective advocate.  Such a rule cannot be reconciled with controlling law.

¶ 45    As noted, a defendant's waiver of his right to counsel must be made knowingly and intelligently.  *See Faretta*, 422 U.S. at 835.  In this context, though, the terms "knowingly" and "intelligently" do not refer "to the wisdom of the waiver"; rather, the court must honor a defendant's request to proceed pro se as long as "it is satisfied that [the] defendant knows what he or she is doing and understands the consequences." *Johnson*, ¶ 18.

¶ 46    Once the defendant has validly waived his right to counsel, he is entitled to conduct his own defense, notwithstanding the obvious truth that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938).  Thus, a defendant's lack of legal training or

specialized knowledge or experience does not preclude him from exercising his right to defend himself. *See Faretta*, 422 U.S. at 836; *see also People v. Mogul*, 812 P.2d 705, 709 (Colo. App. 1991) ("A defendant's technical legal knowledge is not a factor to be considered by the trial court in deciding whether to grant or deny the motion [to proceed pro se]."). By the same token, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta*, 422 U.S. at 834 n.46.

¶ 47    Gemelli concedes that a defendant has a right to conduct his own defense, even "to his own detriment," *id.* at 834, but he insists that "there is a difference between a person whose self-representation is passable, but not exemplary," in which case court intervention is not required, and "a person whose performance is" entirely "incompetent," in which case the court must sua sponte appoint counsel. But any rule recognizing that distinction would be at odds with all of the principles underlying the right of self-representation.

¶ 48    *Romero* undercuts, rather than advances, Gemelli's position. In *Romero*, the defendant, who had proceeded pro se at trial, argued

that his defense was so "inept" as to require the trial court to appoint advisory counsel. 694 P.2d at 1265. (The defendant, who had "minimal education and some difficulty in expressing himself," failed to advance any theory of defense and told the jury during closing argument that, "I ain't saying that I didn't do the crime or anything like that, but basically, I passed out . . . on drugs." *Id.* at 1262-63, 1265-66.) The supreme court concluded that the failure to appoint advisory counsel did not violate the defendant's right to a fair trial or otherwise require reversal. *Id.* at 1265-66. Still, the court acknowledged that there could be a circumstance where "a pro se defendant's performance reache[d] such a level of ineptitude as to demonstrate a fundamental inability to provide any meaningful representation in his defense." *Id.* at 1265. To ensure that in such a circumstance the proceedings did not become fundamentally unfair, the court suggested two options for preserving the defendant's rights: the trial court could "remind[] the accused at appropriate stages of the proceedings of his continuing right to reclaim the assistance of counsel," or it could appoint advisory counsel. *Id.* at 1265 & n.5. The court did not suggest that

24

the trial court could simply force the defendant to give up his right of self-representation and accept a lawyer.

¶ 49     We acknowledge that Gemelli was not an exemplary advocate: he did not always lay the proper foundation to impeach witnesses on cross-examination, which meant he did not introduce all of the evidence he wished to, and he often asked irrelevant, redundant, or otherwise improper questions that drew objections that might have flustered him.  But when he validly elected to proceed pro se, he knowingly accepted the "dangers and disadvantages of self-representation."  *Faretta*, 422 U.S. at 835.  The court was neither obligated nor authorized to relieve him of the consequences of his decision by sua sponte rescinding his waiver.

¶ 50     In any event, Gemelli does not explain how terminating his self-representation mid-trial and sending in advisory counsel would have helped matters.  As Gemelli told the trial court at the *Bergerud* hearing, and as was apparent at trial, he "kn[ew] the case inside out, upside down, backwards.  Nobody kn[ew] the case better than [he] d[id]."  Advisory counsel, on the other hand, had been appointed only a month earlier and, as the trial court warned, was unlikely to be prepared to represent Gemelli at trial.

25

¶ 51    Under the circumstances, we discern no error from the trial

court's failure to override Gemelli's valid waiver of his right to

counsel and order advisory counsel to take over the representation.

## V.    Response to Jury Question

¶ 52    Within a few hours of beginning its deliberations, the jury

submitted the following question to the court:

> If the jurors are unanimous on all charges
> except one, will the Defendant be held
> accountable for any unanimous guilty charges
> or will the entire trial end in a "hung jury"
> because there could be one "hung charge"?

The court sent the jury the following response: "The Court is unable

to respond to this question at this time."

¶ 53    Gemelli contends that the court's response constitutes

reversible error.  He says that the jury indicated it was deadlocked

on one count, and, therefore, before the court could respond to the

question, it had to inquire whether further deliberations were likely

to lead to a unanimous verdict.  In the absence of that inquiry, he

argues, the court's response was coercive.

¶ 54    A trial court must avoid giving any instruction that coerces the

jury to reach a verdict.  *See People v. Schwartz*, 678 P.2d 1000,

1012 (Colo. 1984).  Thus, when a jury indicates it is deadlocked, the

26

court may give a "modified-*Allen*" instruction, *see Allen v. People*, 660 P.2d 896 (Colo. 1983), which seeks to "encourage jurors to reach a verdict without coercing them into doing so." *Gibbons v. People*, 2014 CO 67, ¶ 1. Before giving such an instruction, the court "must first determine whether there is a likelihood of progress towards a unanimous verdict upon further deliberations." *Schwartz*, 678 P.2d at 1012. But if there is no indication that the jury is deadlocked, a modified-*Allen* instruction is not warranted. *See People v. Cox*, 2023 COA 1, ¶ 18.

¶ 55     Here, the jury's note did not indicate a deadlock. *See id.* at ¶¶ 11, 20, 28 (The jury did not indicate it was deadlocked when it asked the court, "What happens if the jury fails to reach a unanimous decision?" and "Is there a max length for jury deliberations?"). And, at the time, no one thought it did. In deciding how to respond, the court noted that if, "[a]t some point," "the jurors advise the Court that they are truly hung . . . the Court would be prepared to invite jurors back into session and inquire whether they have exhausted all possibility of deliberation and provide them additional instructions." Neither party challenged the court's view that the jury was not "truly hung."

¶ 56 Thus, even if the court's response was "tantamount to an instruction to keep deliberating," as Gemelli argues, the court did not err.

## VI. Disposition

¶ 57 The judgment is affirmed.

JUDGE DAILEY and JUDGE DUNN concur.